## CHARLES H. MORSE

*v.*

## ELIZA H. RICHMOND.

*Filed at Ottawa February 3, 1881.*

1. PARTNERSHIP—*when it exists, in respect to land purchase.* Where several persons purchased land on a speculation, each to pay his equal proportion of the cost, and the expenses of platting and improving the same, and the proceeds of sales, after paying the costs and expenses, to be equally divided, and for convenience in making sales the property is conveyed to one of their number, as trustee, who is required to plat the same into town lots, and make sales of the same, etc., the transaction will constitute a partnership, and the trustee will be the managing partner, and the other members of the firm will be bound by his acts, so far as done in the due course of business, and are reasonably necessary to effect the objects and purposes of the association.

2. SAME—*powers of managing member.* Where, by agreement of the parties, the management and control of a business association are given to one of its members, and the nature and character of the business necessarily involve varied duties and responsibilities, the parties to such agreement will be held to have impliedly given to the managing member, where nothing appears to the contrary, the requisite power and authority to discharge such duties and obligations in the ordinary and usual course of business.

3. SAME—*powers of managing partner, by deed.* Where, by the deeds conveying the real estate of a partnership to one as trustee, for the benefit of the firm, and making him the managing partner, he is expressly authorized to make loans, and execute mortgages or trust deeds to secure the same, "on such parts of the premises as he may deem most advisable," this grant of power will authorize him in making loans to execute notes for the sums borrowed, and a note signed by him, as trustee, secured by trust deed executed by him in the same way, will be the note of the firm, and not his individual note, no matter what the party loaning may have supposed as to the managing partner's source of power.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.

Mr. W. T. BURGESS, for the appellant:

No partnership was formed, under the papers in evidence, in the sense to give Jackson, as a member, power to issue negotiable paper binding on the others.

It was only an arrangement among the owners of real estate touching the improvement and sale of the same, with no authority to buy any other, and the use of any firm name is not provided for in any of the papers.

The signing of papers "A. B. Jackson, trustee," is, upon its face, a designation of a person, and not a description of an association of individuals using a name to do business in or with. Upon the face of this paper (the note) is the individual promise of the maker. *Powers* v. *Briggs*, 79 Ill. 493; *Burlingame* v. *Brewster*, 79 id. 515; *Little* v. *Bailey*, 87 id. 23.

The use of the word "trustee" simply indicates that the party has a fund out of which to pay it, and proposes to make it a charge upon that fund; but it is a great stretch of imagination to make it mean a charge upon the person of any one but the signer.

As to the power of one partner to bind the firm by bill, note, etc., counsel referred to Collyer on Part. sec. 402; *Gray* v. *Ward*, 32 Ill. 32; Story on Part. secs. 126, 127, 238, 154; 3 Kent's Com. 42, 33; *Marvin* v. *Andrews & Mack*, 10 Wend. 459.

As to the rule that written powers must be strictly construed and followed, counsel cited *Howard* v. *Baillie*, 2 H. Bl. 618; *Franklin* v. *Egell*, 1 Sneed, 497; *Strong* v. *Stewart*, 9 Heiskell, 137; *Farrar* v. *Duncan*, 29 La. 126; *McAlpin* v. *Cassiday*, 17 Tex. 449; *Valentine* v. *Piper*, 22 Pick. 85.

Where authority is conferred upon an agent by a formal instrument, as, by a power of attorney, there are two rules of construction to be carefully attended to: 1. The meaning of 'general words in the instrument will be restricted by the context, and construed accordingly. 2. The authority will be construed strictly, so as to exclude the exercise of any power which is not warranted, either by the actual terms used or as a necessary means of executing the authority with effect. The following cases are cited in support of this rule: *Bissell* v. *Terry*, 69 Ill. 184; Dunlap's Paley on Agency, 192; Story on Agency, secs. 68, 69; *Chase* v. *Dana*, 44 Ill. 262;

*Wood* v. *Goodridge*, 7 Cush. 117; *Rossiter* v. *Rossiter*, 8 Wend. 495; *Nixon* v. *Hyserott*, 5 Johns. 57; *Geiger* v. *Bolles*, 1 N. Y. Sup. C. Rep. 129; *Brantley* v. *So. Life Ins. Co.* 53 Ala. 554; *Craighead* v. *Peterson*, 72 N. Y. 279; *Atwood* v. *Memmings*, 7 B. &. C. 278; *Hubbard* v. *Elmer*, 7 Wend. 446; *Hodge* v. *Combs*, 1 Black, 192; *Rosseau* v. *O'Brien*, 4 Biss. 395; *Hatch* v. *Coddington*, 95 U. S. 48.

Messrs. NEEDHAM & MILLER, for the appellee:

The questions of law involved in this case naturally arrange themselves under two general heads:

1. Was there a partnership in law, as to third persons, existing between Morse and Jackson, as charged in the bill; and

2. Had Jackson the power to borrow money for the business of the firm, and give therefor a promissory note that would bind the members of the firm.

As to what state of facts will constitute a partnership in law as to third persons, counsel cited Collyer on Part. secs. 3, 81, 82, 83; *Waugh* v. *Carver*, Smith's Lead. Cases, vol. 1, (Eng. ed.) 491; *Niehoff et al.* v. *Dudley et al.* 40 Ill. 406; *Pittis et al.* v. *Atkins et al.* 60 id. 454; *Flagg* v. *Stowe*, 85 id. 164; *Irving* v. *N. C. and St. L. R. R. Co.* 92 id. 103.

But it is said this was an arrangement among the owners of real estate touching the sale and improvement thereof, and therefore is not a partnership.

That partnership may exist in the buying and selling of lands, see Story on Part. secs. 82, 83; *Williams* v. *Gillies*, 20 Sup. C. (N. Y.) 422; *Chester* v. *Dickerson*, 54 N. Y. 1; *Sage* v. *Sherman*, 2 id. 417; *Ontario Bank* v. *Hennessy*, 48 N. Y. 549; *Fall River Whaling Co.* v. *Borden*, 10 Cush. 458; *Dudley* v. *Littlefield*, 21 Me. 418; *Dale* v. *Hamilton*, 5 Hare, 383.

It is further urged by appellant's counsel, that they did not provide for the use of any firm name in the trust deed, but this, we submit, is wholly immaterial. The business of a firm may be carried on in the name of one of the partners.

*LeRoy.* v. *Johnson,* 2 Peters, 198; Collyer on Part. sec. 215, n. 2; *Williams* v. *Gillies, supra.*

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court for the First District, affirming a decree of the Superior Court of Cook county, rendered in a chancery proceeding commenced by appellee against the heirs at law of Andrew B. Jackson, deceased, his administratrix, and Charles H. Morse, appellant. The bill charges, that on the 5th day of March, 1874, Andrew B. Jackson, since deceased, and Charles H. Morse, were partners, and jointly interested in certain real estate situated in the county of Cook and State of Illinois. That the title to said property was acquired and held for their use in the name and style of "Andrew B. Jackson, trustee." That on the day last named, Jackson & Morse, being indebted to the complainant in the sum of two thousand and eighty dollars, for moneys used in and about their partnership business, executed to her their note, of that date, for the amount of said indebtedness, by the name and style of "Andrew B. Jackson, trustee," payable one year after date. That on the same day, the said Jackson, as such trustee, together with his wife, for the purpose of securing the payment of the note, executed to complainant a deed of trust upon certain lands, describing them. The bill also shows the subsequent death of Jackson, alleges default in payment of the note, and prays for a personal decree against Morse, and a sale of the property mentioned in the trust deed.

Morse answered, denying the partnership and all liability on account of the note. There was a decree in favor of complainant, substantially as prayed for in the bill, which, as already stated, was, on appeal, affirmed by the Appellate Court.

It will be perceived from the foregoing, that the real question involved in this controversy, is, whether the note secured

by the deed of trust, and which was signed in the manner heretofore stated, by Jackson alone, is the note of Jackson & Morse, as partners, or the individual note of Jackson.

A brief statement of the circumstances under which this note was executed, is necessary to a proper solution of the questions involved.

It appears, from the record before us, that prior to the 29th day of March, 1872, Luther F. Greenleaf, Andrew B. Jackson, Stephen P. Lunt, and Charles H. Morse, the appellant, purchased, partly on credit, certain lands situated in Cook county, on the line of the Chicago and Milwaukee Railroad, amounting in value to some $92,000, giving for the deferred payments their joint and several notes . The object of the purchase was, to lay out and build up a town or village on the premises—the enterprise being a mere venture or speculation. In pursuance of this object, and for the mere convenience of the parties in making transfers to those who might be desirous of investing in the town or village property, it was deemed advisable to convey the legal estate in the whole to one of their number, upon certain specified trusts.

Accordingly, on the day above mentioned, in pursuance of this arrangement, the entire property belonging to the parties at that time was conveyed to Stephen P. Lunt, upon the following trusts: "To subdivide said premises, or any part thereof, into lots, and to expend whatever money he (the trustee) deems best in improving and making said premises salable for village or town lots; and to sell and convey said premises, or any part thereof, at public or private sale, upon such terms and conditions as he may deem best. * * * And, also make loans, if he finds it necessary so to do, in order to lay out and improve said premises, or any part thereof, or to pay off and satisfy the indebtedness 'now' on said premises, and in order to secure said loans he may execute 'mortgage' or trust deeds on such portion or part of said premises as he (said Lunt) may deem most advisable; and also to pay · out of the money received from said premises, whatever

money, if any, second party has advanced or may owe for improving said premises, as aforesaid; and also to pay out of same any and all incumbrances 'now' on said premises that may become due and payable. And upon further trusts, that second party shall render to first party, as often as once every six months, viz: half yearly, a full and true account of all his acts in the premises, and divide whatever money, notes or securities he has received on account of said premises or which he then holds susceptible of being divided, as follows, to-wit: One-fourth thereof to be paid or delivered to said Luther L. Greenleaf, one-fourth to Andrew B. Jackson, one-fourth to Charles H. Morse, and one-fourth to be retained by second party. That is to say, each of said parties, their heirs, &c., are entitled to an equal part or parcel of the proceeds of said premises, after payment of all costs and incumbrances thereon; and upon the further trust that at the expiration of five years from 'this date' second party shall render a final account in the premises, and that all moneys, notes, &c., held by him on account of said premises, and all property, if any, remaining unsold, shall be divided equally," &c.

By a provision in this deed, Jackson is made the successor in trust, of Lunt, in the event of the latter's death or refusal to act.

On the 28th of February following, Greenleaf, Morse, Jackson and Patrick L. Tuohey, and their respective wives, conveyed, by deed, other lands adjoining those embraced in the first deed, substantially upon the same trusts, except that the conveyance provides for an equal division of the property between the five, instead of the four, as in the other deed.

Subsequent to the original purchase, Isaac R. Hitt bought of Greenleaf an interest in the property, and Lunt, having sold his equitable interest to Jackson, Morse and Hitt, and refusing to act any longer as trustee, on the first of February, 1873, conveyed, at their request, the legal estate in the whole of the property to Jackson, as his successor in trust, upon the same trusts he had held the property himself; except with

respect to the proportions in which the property was to be divided between the parties in interest. Before the execution of the note and deed of trust by Jackson to appellee, Hitt. had sold and transferred his entire interest to Jackson and Morse, so that at that time Jackson and Morse were the only ones belonging to the association, which was then generally. known as the "Rogers Park Company," and owned the entire interest in the property, subject to the incumbrances then upon it. The business of the association was not at all. affected, so far as we can discover, by these changes in the equitable ownership, or the change in the trusteeship. Lunt testifies, that during his term he "laid out and threw up the street, fenced quite a number of blocks, and (as he thinks) put up five or six buildings, and dwellings, and depot building, and also set out some trees."

He further testifies, that whenever it was necessary he called. the parties together, and the affairs of the company were talked over, and that if money was wanted each party contributed his part; that in collecting these contributions he talked over with Morse, as well as the others, the affairs of the company, and that while Morse gave them less personal attention than any of the other parties, he was always prompt, perhaps more so than any of them, in paying his share of the expenses.

He also testifies, that it was the object of the association to plat the property, and sell and make as much as they could; that it was not the purpose to hold the property for a long time. Under this arrangement debts were incurred to a large amount, for some of which notes were given and subsequently paid off by the trustee, and no complaint, so far as the record shows, was ever made by Morse or any of the parties about the manner in which he conducted the business; nor was it ever claimed, so far as we can discover, that in doing so he was transcending his authority. All this business was done in the name of the acting trustee, for the benefit of the association, and clearly with their knowledge and consent.

As already shown, the lands were bought upon speculation, and the joint and several notes of all the parties, including appellant, were given for a part of the purchase money, and the evidence shows that the proceeds of some of the property sold was applied in part payment of these notes, and it was expressly agreed that the business should be thus carried on by the trustee, and that the proceeds of the property should be equally divided between them, which, in effect, was an agreement to divide the profits, and it clearly appears that the expenses of the concern were to be borne in the same proportion.

By all the tests laid down in the books, we here find every element of a partnership. The trustee for the time being, was nothing more than the managing partner of the concern, and the other members were clearly bound by his acts, so far as they were done in the due course of business, and were reasonably necessary to effectuate the objects and purposes of the association. Where, by agreement of the parties, the management and control of a business association are given to one of its members, and the nature and character of the business necessarily involve varied duties and responsibilities, the parties to such agreement will be held to have impliedly given to the managing member, where nothing appears to the contrary, the requisite power and authority to discharge such duties and obligations in the ordinary and usual course of business.

In the view we take of this case, it is not necessary to determine whether, by reason of the existence of the partnership and the general character of the duties imposed upon Jackson, as the managing member of the firm, he was, by implication, authorized to execute promissory notes on behalf of the firm. By the express provisions of both deeds under which he became the managing partner of the concern, he is authorized to make loans, and execute mortgages or trust deeds to secure the same, "on such parts of the premises as he may deem most advisable;" and we are clearly of opinion this grant of

power authorized him in making loans to execute notes for the sums advanced. This is the ordinary and almost universal method of evidencing loans secured by mortgage or deeds of trust, and it is but reasonable to hold that in conferring on him the power to make loans, the parties to the instruments impliedly authorized him to execute the ordinary and usual evidences of such loans.

This being so, it follows that the note in question is, in law, the note of Morse and Jackson, and not of Jackson alone, and that Morse is personally liable thereon.

But it is insisted that the bill does not proceed upon the theory that the power to execute the note is derived from these deeds, and, moreover, that Richmond himself, as agent of complainant, in accepting the note, supposed the power to make it was derived from the fact that Jackson and Morse were equal partners in the business, and not from the deeds in question. This, we are of opinion, does not at all alter the case, or in anywise relieve Morse from his liability on the note. The note was given for money advanced to the firm, and used in the firm's business, and was clearly intended as a partnership note, and the question is, did Jackson have the authority to make the note, and not what he or Richmond may have supposed as to the source of his power to do so, and the deeds were competent testimony to establish such authority. If the note was executed as a partnership note, and Jackson had the requisite power for that purpose, it is wholly immaterial how erroneous his or Richmond's views may have been with respect to the source of his power. If the power, as a matter of fact, existed, the partnership is clearly bound.

The bill alleges that Jackson and Morse were partners; that the affairs and business of the partnership were carried on in the name of "Andrew B. Jackson, trustee;" and that the firm, by such name and style, made the note in question, and these facts being sufficiently proven, authorized the de-

cree.   We see no variance between the proofs and allegations in the bill, in the respect supposed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*