## John H. VanHousen

*v.*

### F. W. Copeland *et al.*

*Opinion filed June 17, 1899.*

1. Partnership—*when partnership relation exists.* The relation between parties combining their property and labor in an enterprise formed for the purpose of purchasing lots and erecting a building thereon for sale, in the profits or losses of which they are to share, is one of partnership.

2. Same—*in equity partnership real estate is regarded as personal property.* In equity the real estate of a partnership, as between the partners, is regarded and administered as personal property and as assets or stock in trade of the firm.

3. Statute of Frauds—*partnership agreement to trade in real estate may be oral.* An oral agreement to form a partnership for the purpose of trading in real estate for profit is not within the Statute of Frauds.

4. Same—*extent of partner's interest in firm's real estate may be shown by parol.* The extent of each partner's interest in partnership real

estate held as partnership stock in trade for profit may be shown by parol, whether the title is in one of the partners or in all.

5. SAME—*oral agreement between partners as to their interest in partnership land not void.* Oral agreements between partners as to their respective interests, as partners, in real estate constituting the assets of the firm are not void under the Statute of Frauds.

*VanHousen* v. *Copeland,* 79 Ill. App. 139, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. H. M. SHEPARD, Judge, presiding.

The Appellate Court for the First District affirmed, with certain modifications hereinafter referred to, a decree entered in the superior court of Cook county adjusting the accounts between the respective parties hereto, as partners. The appellant by this appeal questions the correctness of the decree of the superior court as affirmed by the Appellate Court.

In substance, the facts found by the master to whom the cause was referred, and which findings were approved by the court, are, that in the year 1887 appellees F. W. Copeland and John J. McSorley, who were co-partners in business as contractors and builders of houses in the city of Chicago, together with appellee W. L. Copeland and appellant VanHousen, entered into the enterprise of purchasing a building site and constructing a building thereon for the purpose of selling the same at a profit, in which profit said persons were to share equally. The parties contracted for six lots at the corner of West Taylor street and Hermitage avenue, for which they were to pay the sum of $7000. F. W. Copeland and McSorley paid $500 as part of the purchase money for the lots, and a contract was delivered to the parties hereto entitling them to a conveyance of the lots upon full payment of the purchase money. It was a part of the understanding between the parties that Copeland & McSorley should devote the necessary time, as builders and contractors,

to the matter of the construction of the building, and that they should be compensated therefor. The parties, in the beginning, had in view the erection of a building the cost whereof should not exceed the sum of $19,000, and on November 3, 1887, a writing was signed, as follows:

*"November 3, 1887.*

"We, the undersigned, hereby agree with John H. VanHousen and William L. Copeland that the building to be erected on Taylor street, corner of Hermitage avenue, shall not cost, when built, to exceed nineteen thousand dollars ($19,000). Should the cost be less than the above named sum, after allowing a reasonable compensation for services, such amount, if any, to be deducted from the original sum.

Frank W. Copeland,
John J. McSorley,
John H. VanHousen,
W. L. Copeland."

Copeland & McSorley began the construction of the building, but after the work had proceeded but a short time all the parties deemed it wise to depart from the original conclusion as to the character of the building, and decided to make many changes in the original plan with a view of making a more substantial and better building, and the construction of the house was carried forward in accordance with this later determination. The parties, in entering upon the undertaking, acted upon the belief that when the building was partially completed a loan could be negotiated for a sufficient amount to cover the entire purchase price of the ground and full cost of erecting and completing the building, but it was understood that some means must be furnished to defray the cost of bringing the building to that state of partial completion which was requisite to the successful negotiation of the proposed loan. W. L. Copeland advanced $2000 and VanHousen advanced $5500, and Copeland & McSorley proceeded with the work of erecting the building. The work having progressed sufficiently, as the parties believed, to enable them to obtain the desired loan, and it being found necessary, in order to secure the loan, the title

should be placed in the name of some one of them, they entered into the following agreement in writing:

"CHICAGO, *February 28, 1888.*

"In consideration of a land contract and buildings thereon, located at the south-east corner of Taylor street and Hermitage avenue, being about 126 feet on Taylor street and 100 feet on Hermitage avenue, this day assigned to J. H. VanHousen by W. L. Copeland, F. W. Copeland and John J. McSorley, and the further consideration that all the parties above named, and including J. H. VanHousen, the assignee, shall go ahead and complete the above named building in the manner and style and specification as heretofore made and contemplated, J. H. VanHousen, the assignee, agrees to procure the means to complete the building, and when done and bills all adjusted and paid an accounting to be had between the parties, and the cost of the buildings, together with commissions and expenses on loan and interest on moneys to be included in the gross cost, the amount shall be apportioned to each building alike, to-wit, the same amount to each of the six houses in said block. When this is fully completed the said John H. VanHousen shall deed to said F. W. Copeland and William L. Copeland and John J. McSorley the three east buildings in said block, one only to each, who shall assume whatever liens exist on it and pay to the said VanHousen whatever further sum is found to be due thereon. The excess, if any, to draw interest at the rate of seven per cent per annum, and the deed provided for not to be delivered until the sum in excess is paid.

J. H. VANHOUSEN,
WILLIAM L. COPELAND,
FRANK W. COPELAND,
JOHN J. McSORLEY."

The title was conveyed to VanHousen, who negotiated a loan of $30,000, secured by a mortgage thereon. Out of the sum borrowed, $6500 balance of the purchase price of the lots was paid and the sum of $2000 advanced by W. L. Copeland was returned to him. Commissions and other expenses incurred in making the loan, to the amount of $917, were also paid out of the sum borrowed.

The building was completed about May 1, 1888. It covered the entire front of six lots and contained thirty-six flats, but a portion of the flats was afterwards converted into two business rooms. Soon after the building

was completed the parties determined it was not best to divide the property and apportion the liens as contemplated by the agreement of February 28, 1888, but that it was the better business policy the property should be sold as an entirety, and it was then verbally agreed that the Copelands and McSorley should pay VanHousen the sum of $1000 for his services in the matter of securing the loan, and that VanHousen should receive the rents and profits arising from the building and defray the expenses of management until a satisfactory purchaser could be obtained. In the summer of 1888 the compensation to be paid Copeland & McSorley for their services and time employed in the erection of the building was fixed, by agreement of the parties, at $2500. On October 8, 1888, it was found, upon a settlement made between VanHousen and Copeland & McSorley, that said sum had been paid, and that said contractors had received, in addition thereto, including material not used in the building, wheel-barrows, scaffolding, etc., taken by them, the sum of $1127.15. A note was executed for the excess, payable to VanHousen. The rents obtained from the building until April 22, 1890, were collected or paid over to VanHousen. At the last mentioned date the property was sold for $48,000. The purchaser retained $30,000 to meet the mortgage on the property and paid $18,000 to VanHousen. After repeated efforts, being unable to amicably adjust the matter, the appellees, on the theory the parties interested were co-partners, exhibited their bill in chancery against the appellant for an accounting and adjustment of the affairs of the co-partnership. The appellant answered the bill, and the cause was referred to a master to take and report the proof, together with his conclusions of law and fact. Exceptions to the master's report were overruled and the report approved and a decree entered accordingly. The decree declared the relation of the parties was that of partners, and that the venture, including rents collected, had resulted in a net

profit of $7500.44, and that upon a final adjustment the appellant, VanHousen, should pay, and he was ordered to pay, the following amounts to the appellees, respectively: W. L. Copeland $291.78, F. W. Copeland $1233.40, and McSorley $1233.40, and that a judgment that had been entered in favor of VanHousen (appellant) against F. W. Copeland and McSorley on the note given by them for the excess received by them above the said amount of $2500, should be canceled.

In stating the account the master charged the appellant with interest on certain sums in his hands. The exceptions to the master's report did not question this item. In the Appellate Court it was assigned by the appellant as for error that interest was not computed and allowed by the master upon amounts in the hands of F. W. Copeland and McSorley retained by them under like circumstances held sufficient to render the appellant liable to account for interest. The Appellate Court deemed this error well assigned, and ordered that the decree should be modified by reducing the amount to be paid by appellant to said Copeland & McSorley accordingly, but giving W. L. Copeland no benefit of the reduction, upon the ground he had preferred no objection to the decree and was content therewith. In this respect the record in this court as to W. L. Copeland is in the same condition.

S. A. WIGHT, and BROWN, WHEELER, BROWN & HAY, for appellant.

F. M. WILLIAMS, and WILLIAMS & KRAFT, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

In the brief presented in behalf of appellant it is said: "The controversy arises over—first, purported verbal agreements claimed by appellees Copeland & McSorley

to have been subsequently to February 28, 1888, made
between Frank W. Copeland and John H. VanHousen
about May 1, 1888, whereby it is claimed that the prop-
erty should be sold and net proceeds divided equally
between the four parties; second, it is claimed by Cope-
land & McSorley that they were entitled to compensation
in the sum of $2500 for their services in the erection of
the building; third, there is a considerable difference in
regard to the accounts rendered by appellees Copeland
& McSorley and by appellant VanHousen."

As to the first of the controversies, counsel urge the
alleged oral agreement is without consideration to sup-
port it, and that its effect, if operative, was to divest
the appellant of title to an interest in the real estate
and it was therefore within the Statute of Frauds, and
further, that the alleged agreement was not established
by the preponderance of the evidence.   Counsel for the
appellant concede it was proven the written agreement
of February 28, 1888, was changed by a subsequent oral
agreement, to the effect that the property, instead of
being divided among the parties, should be sold as one
property, but argue it was not made to appear, by a pre-
ponderance of the evidence, that the proceeds of such
a sale should be divided equally among the parties, and
therefore insist the master should have divided the pro-
ceeds of the sale according to the interest which the
parties would have had under the provisions of the agree-
ment of February 28.   F. W. Copeland and appellee Mc-
Sorley testified in the most unequivocal manner that it
was verbally agreed that the parties should share equally
in the proceeds of the sale of the entire property, and
that the consideration, in part, was the agreement the
appellees should pay the appellant $1000, to recompense
him for his services in procuring the loan.   The appel-
lant contradicted this testimony as to the interest to be
had by each in the property, and his contradiction was
in some degree supported by the testimony of his son,

and to some extent, though but slightly, by that of another witness, and was possibly weakened by the fact it was shown he (appellant) had been convicted and sentenced to the penitentiary for the crime of forgery, or some kindred offense. The testimony of the appellees was strengthened by the fact no steps were taken, after the completion of the building, to ascertain the cost of the entire building and apportion the same to the separate parts of the building, as contemplated by the agreement of February 28, but, upon the contrary, the building was treated as an entirety, the rents and income were received by the appellant and treated as a gross sum in which all were interested, without regard to the different parts of the building which produced the same. The expenses of janitor service, repairing, papering, changing the flats into store or business rooms and of conducting and managing the building were also treated as a gross charge against the income in gross. Our view is, the finding of the master upon the point was correct.

Nor do we think the oral agreement to be inoperative for the lack of sufficient consideration to support it. It appeared beyond dispute, from the testimony, that the agreement of February 28 was entered into for the reason the parties found it necessary, in order to secure a loan, the title to the property should be in one of their number, who should apply for the loan and become personally bound, and the appellant consented that the title to the entire premises might be placed in him and that he would undertake to procure the loan. It was intended and expected an amount substantially equal to the entire cost of the property would be borrowed, and as the indebtedness was to be apportioned on the different lots on which the building stood, the proposed allotment in severalty but gave to each of them property subject to an encumbrance to the amount of its value. The allotment of one-half of the property to VanHousen was to recompense him for the special service on his part attendant upon

securing the loan. The master was fully warranted in finding that after the loan had been negotiated the appellant and the appellees concluded it was better, for the interest of all the parties, the building should not be divided into parts, as was contemplated by the agreement of February 28, but should be sold as a whole. The evidence further justified the conclusion reached by the master, that in order to compensate the appellant for his services in getting the loan, and as in lieu of the increased interest in the property under the February agreement, the appellees agreed they would personally pay him $1000, and that such sum was not to be reckoned as an expense attendant upon the enterprise to be borne in part by appellant, but should be paid to him in full by the three appellees, and that the appellant accepted such sum and abandoned his right under the said written agreement.

The Statute of Frauds has no application here. "A partnership is the contract relation subsisting between persons who have combined their property, labor or skill in an enterprise or business, as principals, for the purpose of joint profit." (17 Am. & Eng. Ency. of Law, p. 828.) Here all the elements necessary to constitute that relation are present. The relation was formed for the purpose of purchasing the lots and erecting the building thereon and renting and managing the same for the acquisition of profits only, in which profits (or losses, if any occurred,) the parties were to share. In equity the real estate of a partnership, as between the partners, is regarded and administered as personal property and assets and stock in trade of the firm. An oral agreement to form a partnership for the purpose of trading in real estate for profit is not within the Statute of Frauds. The extent of each partner's interest in partnership lands held, not as land but as partnership stock in trade and for profit, may be shown by parol, whether the legal title thereto is in one or all the partners, and oral agreements

between the partners as to their respective interests, as such partners, in real estate constituting the assets of the firm are not void under the Statute of Frauds. *Morrill* v. *Colehour*, 82 Ill. 618; *Allison* v. *Perry*, 130 id. 9; *Roby* v. *Colehour*, 135 id. 300; *Speyer* v. *DesJardins*, 144 id. 641; 17 Am. & Eng. Ency. of Law, 948.

We are unable to agree with appellant in his second contention, that the master erred in finding Copeland & McSorley were entitled to compensation, in the sum of $2500, for their services in and about the erection of the building. We do not understand appellant denies it was a part of the arrangement between the parties, at the inception of the enterprise, that Copeland & McSorley were to render services as contractors and builders and were to receive compensation therefor, but his insistence is that such compensation was to be paid only in the event the total cost of the building did not exceed the sum of $19,000. Appellant insists the correctness of this proposition is manifested by the agreement signed by the parties under the date of November 3, 1887, which agreement is set out in the statement of the case. The situation when this agreement was signed was, the parties had settled, in a general way, the character of the structure to be erected, and agreed that Copeland & McSorley should have charge of the work as contractors and builders, without any definite arrangement as to the amount to be invested in the building. The cost of the building would depend very largely upon the quality of the material used and the manner of its construction, the character of the work, etc.,—matters which, in the absence of any limitations, would be wholly in the control of the contractors and builders. The effect and purpose of the agreement was to serve as a restriction upon the builders by fixing the total sum to be invested in the building. In order it might be clear the contractors were not to be paid the full sum of $19,000 if the building should cost less than that amount, a clause to that effect was

inserted, and the reference to the compensation of the builders found in that clause is to the effect that in computing such cost of the building the compensation of the builders and contractors shall be included. Afterwards, as is conceded by all the parties, it was determined to construct a much more expensive building. The master was justified in finding, from the testimony of the parties, that the sum of $2500 was fixed upon by the appellant and the contractors as the amount to be paid said Copeland & McSorley, and that such was the fact seems, so far as this appellant is concerned, to be removed from the range of contention by an item to that effect incorporated in a statement of accounts made and signed by the appellant, upon which he and said contractors concluded a settlement between them. Whether W. L. Copeland was a party to the agreement fixing such compensation of the contractors at $2500 is not important here to consider. He made no complaint to the decree in the superior court and urges none here, and the appellant cannot complain in his behalf.

The third contention is, "there is a considerable difference in regard to the accounts rendered by appellees Copeland & McSorley and by appellant, VanHousen." The truth of this contention cannot be denied. The testimony bearing upon it, as appears from appellant's brief, occupies 692 pages of the original record. The complaints against the action of the master upon this testimony are in the main too general to aid in their investigation. We have examined such objections as are specific enough to enable us to do so, and think none of them well founded. The master seems to have fairly weighed and considered the testimony, and arrived, as we think, at correct conclusions upon the points involved.

The decree of the Appellate Court is affirmed.

*Decree affirmed.*