(No. 29480.—

JOHN F. HARMON, JR., *et al.,* Appellees, *vs.* JOHN C. MAR-
TIN *et al.*—(H. G. FERGUSON, Appellant.)

*Opinion filed January 22, 1947.*

RAYMOND O. HORN, of Salem, and PUTTING & PUT-TING, of Springfield, for appellant.

JOHN L. KAGY, of Salem, for plaintiff-appellees; and BAKER, LESEMAN, KAGY &. WAGNER, of East St. Louis, for defendant-appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

April 10, 1943, John F. Harmon, Jr., Dwight D. Taylor, Grace M. Taylor, A. E. Miller, Richard A. Anderson, and Cora Anderson, (who will hereinafter, for brevity and convenience, be referred to as plaintiff-appellees,) filed in the circuit court of Marion county a complaint in chancery, wherein, for themselves and others similarly situated, they sought to quiet title to property in the Miller-Roddy sub-division, the Brookside addition and the Vandervort-Kell addition to the city of Salem as against any claims of the defendants, John C. Martin, B. E. Martin, W. O. Roddy, H. G. Ferguson, Lulu C. Vandervort, Cecil M. Kell, Mary Kell Bowers and Rita Kell Hawkins.

The complaint alleged in substance that prior to October 1, 1919, the defendants, John C. Martin, B. E. Martin, W. O. Roddy and H. G. Ferguson, together with O. A. Kell and E. B. Vandervort, entered into a secret agreement or understanding and, in pursuance of such agreement, purchased certain real estate, taking the title to a part thereof in the name of Vandervort and the title to a part in the name of Roddy; that Vandervort and Roddy

caused a part of said lands to be platted as the Miller-Roddy subdivision, and Vandervort caused another part to be platted as the Brookside addition to Salem; that the said Roddy and Vandervort thereupon proceeded, with the advice, consent, knowledge, acquiescence and connivance of the said John C. Martin, B. E. Martin, H. G. Ferguson and O. A. Kell, to sell lots in said platted tracts, accept the purchase money therefor, and give to the respective purchasers warranty deeds for the property so purchased; that April 12, 1920, O. A. Kell died intestate, leaving surviving as his only heirs-at-law, the defendants, Cecil M. Kell, Mary Kell Bowers and Rita Kell Hawkins; that August 13, 1924, E. B. Vandervort died testate, leaving the defendant, Lulu C. Vandervort, as his sole devisee and legatee; that at the time of his death Vandervort still retained title to a portion of the premises conveyed to him, and on December 8, 1924, the defendant, Lulu C. Vandervort, as the sole devisee and legatee of E. H. Vandervort, deceased, conveyed the same by warranty deed to the defendant, B. E. Martin; that a portion of the same had not been platted, and the said Martin caused such portion to be platted as the Vandervort-Kell addition to Salem, and with the advice, consent, knowledge, acquiescence and connivance of the other defendants, sold and conveyed certain of the properties so conveyed to him by the defendant, Lulu C. Vandervort, and accepted from the purchasers thereof the purchase money therefor, and by warranty deed purported to convey full title to the parties so purchasing; that on or about July 23, 1942, certain instruments disclosing the above-mentioned secret agreements were filed for record in the recorder's office of Marion county, and that the defendant Ferguson refuses to execute proper instruments for clearing the titles of the present owners of properties in said subdivision and additions. The complaint prayed that the defendants, and each of them, be decreed to have no right, title or interest in

and to any of the property described in the complaint, that the defendants be barred and foreclosed from asserting any right, title or claim thereto, and that the owners of property in said subdivision and additions be declared to own the same free and clear of any claims, rights and demands of any kind or nature on the part of the defendants.

Ferguson (hereinafter designated as appellant) answered the complaint, admitting its material allegations, and alleging that he and the said John C. Martin, B. E. Martin, W. O. Roddy, O. A. Kell and E. B. Vandervort furnished the funds with which Vandervort purchased the lands to which he took title. He alleged that Vandervort during his lifetime held said title in trust for appellant and the other persons furnishing the purchase price, and that the defendant, Lulu C. Vandervort, after Vandervort's death, in the inventory of his estate filed by her as executrix, described the property and expressly stated that the title to the same was held in trust by the deceased for himself and five others, the deceased owning an undivided one-sixth part thereof in fee simple. Appellant denied that Lulu C. Vandervort, B. E. Martin, or any other person had any right or authority to convey any of the real estate held in trust by Vandervort. He also denied any knowledge that Roddy ever claimed or purported to be the owner of any real estate described in the complaint and alleged that no act of Roddy's was ever committed with appellant's knowledge or consent.

Appellant also filed a counterclaim, setting up that on or about October 1, 1919, John C. Martin requested him to contribute money toward the establishment of a trust for the purpose of purchasing certain described real estate; that pursuant to such request he advanced the sum of $2500, to be used with like sums advanced by John C. Martin, B. E. Martin, W. O. Roddy, O. A. Kell and E. B. Vandervort; that Vandervort, as trustee, took charge of said trust funds and acquired title to the real estate on

September 29, 1919, by warranty deed, in which Vander-vort was named as grantee; that Vandervort, on October 1, 1919, executed a written declaration of trust, and that he acted as trustee of said real estate until his death on August 13, 1924; that Lulu C. Vandervort was the execu-trix of his estate and as such executrix filed an inventory in which she included such of the trust property as had not been sold by the deceased, and expressly stated in the inventory that the title was held in trust by deceased for himself and five others, deceased owning a one-sixth part thereof in fee simple.

Appellant's counterclaim further alleged that since the death of Vandervort the legal and equitable title to the real estate held by him has remained and still remains in the trust, and that appellant, as one of the beneficiaries of the trust, is the owner of an undivided one-sixth thereof; that none of the counterdefendants are *bona fide* pur-chasers; that none of them ever received a conveyance from Vandervort or from anyone having a lawful right to make such conveyance; that none of such conveyances were made with the knowledge or consent of appellant; and that none of the counterdefendants have any lawful right, title, interest or ownership in said real estate, or any part thereof, except such as some of them may have as beneficiaries of the trust. The prayer of appellant's coun-terclaim was that the trust be decreed to be the absolute owner in fee simple of the real estate in question and that the counterdefendants be ordered to return all of said real estate to the possession of the trust.

Plaintiff-appellees answered appellant's counterclaim, denying that appellant was entitled to the relief sought.

The counterdefendants, John C. Martin, B. E. Martin, W. O. Roddy, Lulu C. Vandervort, Cecil M. Kell, Mary Kell Bowers and Rita Kell Hawkins, (who will hereinafter, for brevity and convenience, be referred to as defendant-appellees,) answered appellant's counterclaim, and also filed

a counterclaim, alleging that prior to October 1, 1919, appellant and the said John C. Martin, B. E. Martin, W. O. Roddy, O. A. Kell and E. B. Vandervort formed and entered into a joint venture or real-estate syndicate for the purchase, subdividing, improvement, sale and disposition of certain lands therein described, under an oral agreement which provided that each of the joint adventurers or members of the syndicate should contribute the sum of $2500, that the real estate should be purchased and title taken in the name of one or more of the joint adventurers or syndicate members, and should be platted, improved with roads, streets, sidewalks and dwellings, and sold, that the expenses incurred in connection with the joint venture should be paid out of the proceeds of said sales and from loans on the property of the syndicate, that full and complete title in fee simple absolute should be conveyed to the purchasers of the property by the syndicate member holding legal title thereto, that the joint adventurers or syndicate members should share equally in the profits of the venture or partnership after the payment of all expenses, including the reasonable commissions of Roddy for selling the lots, that, in the event of the death of the partner holding legal title, the real estate then owned by the syndicate should be conveyed to a surviving member of the syndicate, who would then possess the same powers as the prior holder of the legal title, and that the business of the joint venture or syndicate should continue until all of the real estate was sold or until a majority of the joint adventurers or syndicate members, or their successors, determined to conclude the same and distribute its assets among those entitled to them. It was alleged that shortly after the making of such agreement the syndicate purchased and entered into possession of certain described real estate, the title to a part thereof being taken in the name of Vandervort and the title to a part in the name of Roddy; that, in pursuance of the business of the syndicate, Vandervort and

Roddy platted Miller & Roddy's subdivision and Vandervort platted the Brookside addition, and that sales and conveyances were made of a number of lots in said subdivision and addition; that on April 12, 1920, O. A. Kell died intestate, leaving a widow, Cecil M. Kell, and two children, Mary Kell Bowers and Rita Kell Hawkins, as his only heirs-at-law, who were, pursuant to the agreement creating the syndicate, duly recognized by the members of the syndicate as successors to the interest of O. A. Kell; and that on August 13, 1924, E. B. Vandervort died testate, devising and bequeathing all his property to his widow, Lulu C. Vandervort, who was also duly recognized by the members of the syndicate as the successor to the interest of E. B. Vandervort therein. It was further alleged that after the death of Vandervort, B. E. Martin was selected and designated by a majority of the syndicate members to hold and convey the legal title to all property of the syndicate and to continue the venture or syndicate, pursuant to the agreement under which it was created; that thereupon Lulu C. Vandervort conveyed all property of the syndicate to B. E. Martin, who platted that portion thereof not already subdivided into lots and blocks into the Vandervort-Kell addition and improved the same by the building of streets, sidewalks and houses, under the general direction and charge of Roddy, who was authorized to build the same and borrow money therefor, secured by mortgages on the property, and to take such other and further steps as were incident to the promotion, development and sale of the lots in said addition; and that, from time to time, lots in said additions were sold and conveyances made by the said B. E. Martin.

Defendant-appellees' counterclaim further alleged that on February 14, 1940, the said John C. Martin, B. E. Martin, W. O. Roddy, and Lulu C. Vandervort, and Cecil M. Kell, who was acting for herself and for the said Mary Kell Bowers and Rita Kell Hawkins, decided and deter-

mined that the business of the joint venture or syndicate had been substantially completed, and that it should be dissolved, wound up and terminated; that the syndicate then had cash on hand to the extent of $16,978.20 and three lots, comprising thirty acres, in the Miller & Roddy subdivision; that B. E. Martin accordingly paid to each of the original joint adventurers or syndicate members, or their successors or nominees, except appellant, a one-sixth part of the cash on hand, and also executed and delivered to each of them, except appellant, a warranty deed to five acres of the syndicate's remaining thirty acres; that B. E. Martin also forwarded to appellant a warranty deed for five acres, and at the same time offered and tendered to him the sum of $2829.70, if he would execute and return a certain quitclaim deed which had theretofore been executed by the other syndicate members and which created no liability upon the part of those signing the same, but was required by an examiner of the title of certain of the real estate theretofore owned by the syndicate; that appellant, although he retained the deed to himself for the five acres and thereafter paid all taxes thereon, refused to execute the curative deed; that therefore appellant was never paid the sum of $2829.70; and that defendant-appellees by their counterclaim tendered the same into court for payment to appellant, subject to the order of the court.

Defendant-appellees further alleged that for more than seventeen years after the creation of the joint venture or syndicate, appellant made no inquiries and asserted no objections to the manner in which the syndicate's affairs were being managed, and from time to time received and accepted distributions of money therefrom, and that appellant thereby acquiesced in and approved the acts of the other syndicate members and their successors in the management of the syndicate's business and affairs; and they further alleged that all available records of the syndicate had at all times been open to appellant, who, through his

attorneys and accountants, had examined the same and is fully advised thereof.

The prayer of defendant-appellees' counterclaim was that the court decree that the joint venture and real-estate syndicate be dissolved; that the acts of the joint adventurers and syndicate members be ratified, confirmed and approved; that appellant, or the master in chancery for him, make, execute and deliver the necessary curative instruments to confirm title in the grantees and their subsequent grantees of the property of the syndidate theretofore conveyed; and that there be deducted from the sum of $2829.70 due appellant such fees, costs and expenses as are fixed and determined by the court and the balance paid to him in the manner provided by the court.

Appellant answered this counterclaim, in his answer denying the creation or existence of any partnership, syndicate or joint adventure, and claiming that the land was held in trust by Vandervort as trustee for himself and the other five beneficiaries. He admitted the death of Kell and affirmatively stated that he recognized the heirs of Kell as the successors in interest of his beneficial share in the trust. He admitted the death of Vandervort, the execution of the deed from Lulu C. Vandervort to B. E. Martin, the actions of B. E. Martin in platting the Vandervort-Kell addition and selling and conveying lots therein, and the actions of W. O. Roddy in improving said addition by the building of streets, sidewalks and houses, and borrowing money, secured by mortgages on the property, but denied that either the said Lulu C. Vandervort, the said B. E. Martin or the said W. O. Roddy had any lawful right or authority to so act, and alleged that there was never any agreement that a majority of the beneficiaries of the trust could name a new trustee or that any person other than E. B. Vandervort should hold title to or be allowed to convey, mortgage, or in any way exercise any control over or any rights in said trust estate. He ad-

mitted that he had received and retained the deed from B. E. Martin to him for the five acres of trust property, in the distribution of the assets of the trust, and that he had thereafter paid all taxes against the same. He further admitted that for more than seventeen years he had made no inquiries into the affairs of the trust, but denied that he had acquiesced in or approved the acts of any person in connection with the affairs of the trust, except only those of E. B. Vandervort, the original trustee. He also denied that all available records had at all times been open to him, and alleged that he was unable to obtain a true and just accounting of the affairs of the trust, although he had been put to great expense in attempting to do so.

Before the commencement of the trial it was stipulated by all parties that plaintiff-appellees, A. E. Miller, Richard A. Anderson and Cora Anderson, who hold title derived through conveyances from E. B. Vandervort, and also all other persons who hold title to any of the lands in question under deeds executed and delivered by E. B. Vandervort in his lifetime, are the lawful owners of the fee-simple title thereof, and that the court might so find and decree. Appellant's theory is that Vandervort, and Vandervort alone, was to have charge of the real estate and conduct the business of the trust, and he has stated in his brief filed in this court that he makes no complaint concerning anything done by Vandervort.

After the conclusion of the trial and the case had been taken under advisement and briefs submitted, the circuit court entered a decree finding that plaintiff-appellees were entitled to the relief sought by them in their complaint, and that defendant-appellees were entitled to the relief sought by them in their counterclaim, and dismissing appellant's counterclaim for want of equity. The court further decreed that the plaintiff-appellees were the owners in fee simple absolute of the property claimed by them, free and clear of the claims of appellant or any of the

defendant-appellees, and that all persons holding title to any of the real estate described in the decree (being the real estate comprising the Miller & Roddy subdivision, the Brookside addition and the Vandervort-Kell addition,) under and by virtue of deeds and conveyances executed and delivered by E. B. Vandervort in his lifetime or by B. E. Martin on and after December 8, 1924, or by mesne conveyances of their grantees, are the owners, therefore, in fee simple absolute, free and clear of all claims of appellant or any of the defendant-appellees. It was further ordered that appellant, within ten days, or, in the event of his failure so to do, then the master in chancery, should execute and deliver to B. E. Martin a quitclaim deed in statutory form to the real estate described in the deed from Mrs. Vandervort. The court further decreed that appellant was entitled to receive, in addition to the five-acre tract conveyed to him by B. E. Martin, the sum of $2829.70, and no more, as his share of the proceeds of the liquidation of assets of the joint venture or real-estate syndicate, and judgment was entered against appellant for the costs of the suit. Appellant, claiming a freehold, has brought the record to this court for review.

The evidence discloses that sometime in 1918, W. O. Roddy, a real-estate dealer in Salem, formulated a plan for purchasing and subdividing into ten-acre tracts and town lots a certain 240 acres of land, known as the Sally Owens land, lying partly within and partly adjoining the city limits of Salem. It being necessary to acquire additional lands for street openings and access to the Owens land, he acquired, on his own initiative, six lots in the Dow subdivision adjacent to the Owens land. Roddy discussed the proposed venture with E. B. Vandervort, Dr. O. A. Kell, John C. Martin and B. E. Martin. Vandervort was an attorney, and had represented the Commonwealth Trust Company of St. Louis, the then owner of the Owens land, it having acquired the land through fore-

closure. John C. Martin was then the cashier of the Salem National Bank, and afterward became its president. He and B. E. Martin were brothers. These five men met and discussed the proposition. It was thought the Owens land could be purchased for $12,000, and they each agreed to contribute $2500 to the venture. They agreed to buy the land, subdivide it, acquire the necessary additional land for street openings and access to highways, construct streets, sidewalks, sewers and houses to further the sale of the property, and then sell the property and divide the profits equally among the five of them. They agreed the title to the property would, for convenience, be taken in the name of one of them, that Roddy was to sell the property on commission, that a majority of the group should control in any matter that might come up, and if at the end of the venture they had any "sour" lots on hand, they would divide them or put them up for sale. It was understood that additional funds would be needed for the purchase of street openings and otherwise improving the property, but it was intended to obtain such additional funds from sales or from loans secured by mortgages on the property.

After this agreement was entered into by Roddy, Vandervort, Kell and the Martins, it was ascertained that the 240 acres could not be bought for less than $15,000; and since none of the group desired to increase their contribution, they decided to take someone else in with them in the proposed venture. The group instructed John C. Martin to contact appellant and see if he wanted to join with them in the venture. This was done sometime in September, 1919; and while appellant contradicts to some extent the testimony of John C. Martin and Roddy as to what occurred on that occasion, nevertheless the evidence shows —and as to this there can be no dispute,—that appellant on that occasion agreed to embark with John C. Martin, B. E. Martin, W. O. Roddy, O. A. Kell and E. B. Van-

dervort in the joint enterprise of purchasing, subdividing and selling the 240 acres of land, the net profits therefrom to be divided among them equally, and that in a few days thereafter he contributed to the venture the sum of $2500.

John C. Martin testified that sometime in September, 1919, when appellant was in the bank, he outlined briefly to him the proposition, and then called Roddy, who came over with a map of the property and the three of them discussed the matter thoroughly.; that they informed appellant of all the details of their agreement, as above set out, and that appellant said "I am convinced from what you say we can make a little money, and I will go in and take a sixth interest. I am not familiar with matters up here, and since a majority is going to rule, I will leave the matter with you men here in Salem." Roddy also testified that he was present on this occasion and his version of what occurred was substantially the same as that given by Martin. Appellant, however, testified that nothing was said about the building of streets, sewers, sidewalks and houses, or about borrowing money; that Martin told him the property would be handled by Vandervort as trustee, the title taken by Vandervort and the business conducted by him; and that appellant did not say that he would leave the matter with the Salem members.

September 29, 1919, Vandervort purchased the 240 acres in question and paid therefor the sum of $15,000. The land was conveyed to him personally, as grantee, and on October 1, following, he executed and delivered to each of his associates a declaration of trust, reciting that he held the title in trust for them and himself, each of whom had paid a one-sixth part of the purchase price and was the owner of an undivided one-sixth of the real estate.

In September, 1924, following the death of Vandervort in August of that year, a meeting was held to discuss the affairs of the partnership and decide on its future course of action. Appellant was notified of this meeting and re-

quested to attend, but did not do so. At that meeting which was attended by Roddy, the two Martin men, Mrs. Kell and Mrs. Vandervort, B. E. Martin was elected as successor to Vandervort, and it was decided to plat the remaining lands into an addition to be named the Vandervort-Kell addition in memory of the two deceased members. It was agreed that it would be necessary to build sidewalks, sewers and houses to further the sale of the property, and B. E. Martin and Roddy were authorized to do the building and borrow money for the purpose from the building and loan association.

December 8, 1924, Mrs. Vandervort, by warranty deed, conveyed to B. E. Martin all the real estate held in trust by her husband for the partnership at the time of his death. February 11, 1925, the Vandervort-Kell addition was platted and subdivided into lots and blocks, and Roddy thereafter built eight houses in the addition, the building being financed by money borrowed from the building and loan association.

The depression came on. The property could not be sold. Interest and taxes accumulated. The indebtedness which had been incurred became delinquent. Creditors were pressing for payment. The situation became desperate, and in order to save the property of the partnership John C. Martin advanced of his own funds $4500 and B. E. Martin advanced of his funds $8816.81. They also negotiated loans upon their own credit, which were used to pay taxes, interest, building-and-loan carrying charges and installments and other indebtedness and expenses of the partnership. B. E. Martin called a meeting of the members on December 26, 1934. Appellant was notified of this meeting and urgently requested to be present, but did not attend. Thereafter numerous dates were set for meetings and appellant urged to attend, but on no occasion did he ever do so.

February 14, 1937, John C. Martin wrote appellant, stating the effect of the financial depression upon the business of the group. Appellant replied, requesting a statement disclosing all facts respecting the acreage and subdivisions and the expenses and income therefrom. B. E. Martin wrote appellant in reply, inviting him to come over and discuss the partnership affairs and inspect all available books and records, saying that he believed, if he would do so, they could furnish him all the information he desired. Appellant refused to do this, and instead employed a clerk in the recorder's office to check the record of all conveyances of property in the three subdivisions.

May 4, 1939, W. O. Roddy and B. E. Martin called on appellant at his home in Fairfield for the purpose of discussing partnership affairs. This visit was by appointment which Roddy the previous day had driven to Fairfield to make, and was the first time appellant had ever discussed the partnership venture with any member of the group since September, 1919. Appellant, when Martin and Roddy visited him on May 4, 1939, had a stenographer concealed in an adjoining room, who, unknown to the visitors, took down in shorthand the conversation of the three men, a typewritten transcript of which was introduced in evidence over appellant's objection. At this conference Martin had with him and produced a statement of the affairs and transactions of the venture. He told appellant of the troubles the group had encountered during the depression and of the money advanced by himself and his brother to protect and save the property. He told of the houses they had built, and said they were at that time renting six of them for $30 a month, while during the depression they were rented for $8 a month, and that could not be collected. They told him that Martin had handled the business since the death of Vandervort, that all indebtedness and taxes were paid, and they wanted to wind up

the matter and get rid of it  Appellant, on that occasion, made no contention that Martin had no right to sell and convey the property or that he had no right to handle the business and act as the trustee or managing partner of the group.  He urged Martin to continue handling matters and continue with the sale of the property.  He stated that he was perfectly willing to sell all of the property, but did not want it sacrificed.  He said the improvements they had made would aid in the sale of the lots.  He further said that Martin, his brother, and Roddy were familiar with real estate values in Salem and that what they agreed upon was satisfactory with him.

After this meeting much correspondence was carried on between Roddy and appellant concerning the affairs of the partnership.  August 21, 1939, Roddy wrote him that the sale of lots was blocked because of objections to title, and enclosed a quitclaim deed and agreement which had been prepared to clear the title, and asked that he sign and return the same.  This appellant refused to do, and on February 14, 1940, at a meeting attended by all the members of the group, except appellant, who had been notified but refused to attend, it was decided to terminate the venture, wind up its affairs, and dissolve the partnership.  The assets of the partnership, exclusive of cash on hand, consisted of securities in the form of contracts and notes for lots sold of the face value of $6793, 27 lots in the Vandervort-Kell addition, and 30 acres in the Miller & Roddy subdivision.  It was decided to divide the 30 acres among the six members, giving 5 acres to each.  B. E. Martin, at the request of the others, offered to buy the contracts and unsold lots in order to facilitate the liquidation.  The price agreed upon by the parties at which Martin took over these assets was $6200 for the contracts, and $6800 for the lots, which, according to the undisputed testimony of two disinterested, qualified real-estate men of Salem, was in excess of the fair, cash market value.  The $13,000

paid by Martin for these assets was added to the cash on hand and the expenses paid therefrom, leaving a balance of $16,978.20 to be divided among the six members.

B. E. Martin wrote appellant, advising him of the liquidation, and enclosed a statement covering the transactions from September, 1919, including the final distribution. He also enclosed a quitclaim deed and agreement, similar to the instruments previously forwarded to appellant by Roddy, and which had been executed by all the other members of the group, and requested him to sign and return the same, advising him that as soon as he did so, he would be forwarded a check for $2829.70, being his share of the cash distribution. Appellant accepted and retained the deed to the five acres, and has since paid all taxes thereon; but refused to sign the instruments requested. Subsequent correspondence on the subject between John C. Martin and appellant next followed, with numerous attempts on the part of Martin to talk with appellant personally, none of which were successful. Appellant continued to refuse to sign any quitclaim deeds or curative instruments, and, as a consequence, the present suit to quiet title was filed by purchasers of lots in the Miller & Roddy subdivision, the Brookside addition and the Vandervort-Kell addition.

Appellant insists that the relationship between the parties named in the declaration of trust was not that of partners or joint adventurers, but that said parties were beneficiaries of a real-estate trust, and, as such beneficiaries, each the equitable owner in fee simple of an undivided one-sixth of said real estate.

It is well settled in this State that where parties agree to engage in one or more particular transactions for the purchase and sale of real estate for profit, this constitutes a partnership as to the particular transaction or transactions. (*Parish* v. *Bainum,* 306 Ill. 618; *Phillips* v. *Reynolds,* 236 Ill. 119; *Dicus* v. *Scherer,* 277 Ill. 168;

*Milligan* v. *Mackinlay,* 209 Ill. 358; *VanHousen* v. *Cope-
land,* 180 Ill. 74; *Speyer* v. *Desjardins,* 144 Ill. 641;
*Morse* v. *Richmond,* 97 Ill. 303.) Such an agreement is
not within the Statute of Frauds and may be entered into
and become effectual, although not in writing. (*Fitch* v.
*King,* 279 Ill. 62; *VanHousen* v. *Copeland,* 180 Ill. 74.)
In all cases of partnerships formed to deal in real estate
for profit, the real estate constitutes the stock in trade
of the partnership, and, in order to effectuate the partner-
ship business and the settlement of partnership affairs, is
regarded as personal property, and where title to the real
property is in the name of one of the partners a convey-
ance executed by him for the carrying on or winding up
of the partnership business passes the equitable title of the
partnership. *Wharf* v. *Wharf,* 306 Ill. 79; *VanHousen*
v. *Copeland,* 180 Ill. 74.

There can be no doubt that the agreement under which ·
the property here involved was purchased rendered it per-
sonal in its character. It was purchased on speculation,
to be subdivided, improved and sold and the profits divided.
This undertaking, although it involved numerous business
transactions, the construction of sidewalks, streets, sewers
and houses, and the making of many contracts and com-
prehended a business to be continued over several years,
was but a single specific enterprise for profit. It was,
therefore, a joint adventure having, in general, the legal
incidents of a partnership; or stated in another way, it
was a partnership limited to the one particular enterprise
or venture. (*Hagerman* v. *Schulte,* 349 Ill. 11.) A joint
adventure is not regarded as identical with a partnership,
although, generally speaking, it may be said that prac-
tically the only distinction between the two is that the
former relates to a single specific enterprise or transaction,
while the latter relates to a general business of a particular
kind. A joint adventure, as well as a partnership, is con-

trolled by the terms of the agreement under which it is formed or created.

Appellant claims that the agreement among the six men, under which the land was purchased in 1919, gave no authority to anyone other than Vandervort to deal with the land or handle the affairs of the group or transact any business in connection with the venture; that the election of B. E. Martin as successor to Vandervort and all other acts of the defendant-appellees, including the final distribution of assets, were in violation of the agreement and without lawful authority; and that appellant did not know of such unlawful acts, never authorized, ratified or approved the same, and cannot be bound thereby.

The preponderance of the evidence in the record clearly establishes the following facts: That the terms of the agreement entered into by the original joint adventurers in 1919 provided that a majority of the group should control and decide all questions which might arise; that appellant, at the time he went into the venture in 1919, stated he would leave the matter with the members at Salem; that appellant, for more than seventeen years, paid no attention to the affairs of the organization or the manner in which its business was being transacted and made no objections or inquiries concerning the same; that, although urgently requested to attend the meeting held shortly following the death of Vandervort, and also urged to attend other meetings of the group later on during the depression, appellant never on any occasion did so; that when he was told by Roddy and B. E. Martin, on May 4, 1939, of the actions of the group since the death of Vandervort in platting the Vandervort-Kell addition, building houses and other improvements, borrowing money, selling property, etc., he made no objection thereto and no contention that the death of Vandervort worked a dissolution of the partnership or that the actions of defendants-

appellees were without authority and unlawful, or that B. E. Martin had no lawful right to sell and convey the property of the partnership, but on the contrary, urged Martin to continue handling the sale of the property; that no attempt was ever made by any of the defendant-appellees to deceive appellant or conceal from him any of the transactions or affairs of the partnership; and that all available books and records in connection with the partnership were at all times open to appellant's inspection, and the same were examined by appellant's attorney and also by certified public accountants employed by him. There is no evidence whatever which, in any degree, tends to show that defendant-appellees did not act in the utmost good faith and with entire fidelity to all members of the joint concern, including appellant. The court committed no error in approving the acts of defendant-appellees in the management of the business and affairs of the joint adventure and in holding that appellant had acquiesced in and approved said acts.

The death of Vandervort dissolved the partnership, but Mrs. Vandervort was admitted to the partnership as successor to his interest and the business of the partnership was continued under the management of B. E. Martin. This action was approved and ratified by appellant, both by his conduct in connection with the partnership affairs and in his conversation with Martin and Roddy on May 4, 1939. While technically the admission of Mrs. Vandervort to membership in lieu of her husband was a dissolution of the old partnership and the creation of a new one, the relation of appellant and the other surviving partners was not in any way changed.

It is further contended that the court erred in finding that there was due to appellant the sum of $2829.70, and no more, as his share of the proceeds of the liquidation of the partnership assets; that the court should not have settled the accounts of the parties without first referring

the cause to a master in chancery to state the account; and that appellant was lead by the court to believe there would be no accounting. The counterclaim of defendant-appellees prayed that their acts as joint adventurers, including the dissolution of the partnership and the distribution of its assets, be ratified, confirmed and approved. Appellant knew that the case was to be tried upon this counterclaim, as well as upon the complaint and appellant's counterclaim. Whether a case should be referred to a master or heard in open court is discretionary with the trial court. (*People ex rel. Brignall* v. *Lewe,* 383 Ill. 549; Ill. Rev. Stat. 1945, chap. 110, par. 185.) The finding of the circuit court that appellant is entitled to the sum of $2829.70, and no more, from the liquidation of the partnership assets, is fully warranted by the competent proof in the record.

For the reasons heretofore pointed out, the decree of the circuit court is affirmed.

*Decree affirmed.*