# WILLIAM A. MORGART *vs.* THOMAS F. SMOUSE.

*Assignment of Equitable Interest in Land Within the Statute of Frauds —Not Necessary to Plead the Statute—Agreement to buy and Sell Land and Divide the Profits Not Within the Statute of Frauds—No Action at Law by one Partner Against Another Until After Statement of Accounts.*

An agreement to transfer an equitable interest in lands is within the fourth section of tne Statute of Frauds and is unenforceable if not in writing.

It is not necessary that the defense that the contract sued on is within the Statute of Frauds be set up by plea, but it may be relied upon under the general issue plea.

An agreement between two parties to purchase, develop and sell certain lands for their joint account and to share the profits and losses of the venture is not an agreement for the sale of an interest in land within the Statute of Frauds and may validly be made by parol.

Such an agreement constitutes the parties partners as to such purchase and sale of the land and either party is entitled to an accounting in equity from the other as to the profits of the joint transaction.

But no action at law lies to recover a share of the profits received by one of the parties until there has been some settlement or statement of accounts between them.

Appeal from the Circuit Court for Allegany County (R. R. HENDERSON and KEEDY, JJ.)

The cause was argued before McSHERRY, C. J., BOYD, SCHMUCKER and BURKE, JJ.

*Ferdinand Williams* and *De Warren H. Reynolds*, for the appellant.

*Thomas J. Peddicord* (with whom was *D. James Blackiston* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellee sued the appellant in the Circuit Court for Allegany County to recover what he claimed to be his share of the profits realized from the purchase and sale of certain real estate. The declaration contained only the common counts in *assumpsit*, but it was accompanied by a bill of particulars in the form of an account charging the defendant with one-half of specified profits alleged to have been received by him on three several transactions. The count relied on in argument by the plaintiff was the one for money had and received for his use.

The appellant as defendant pleaded two general issue pleas, and also payment and limitations, whereupon the plaintiff joined issue on all of the pleas except that of limitations to which he replied a new promise. To that replication the plaintiff rejoined that he had been kept in ignorance of his cause of action by the defendant's fraud until within less than three years before the bringing of the suit.

The case was tried before the Court without a jury and the verdict and judgment were against the defendant who took this appeal. There is but one bill of exceptions in the record and that is to the Court's ruling on the prayers.

The plaintiff to support his case offered evidence tending to prove the making of a verbal contract between him and the defendant for the purchase, development and sale for their joint account of two parcels of land, the one containing 5,000

acres, known as the Cunningham Tract and the other, containing 1,300 acres, known as the Maynadier Tract.

To establish the contract in reference to the Cunningham Tract the plaintiff himself went upon the stand as a witness, and after saying that he had frequent interviews with Mr. Hamill, the owner of the lands, beginning in 1896, he testified as follows: "I met Mr. Hamill a number of times afterward, and in conversations about this land I finally got a price from him on the land as he represented three-fourths owners of the property at the time, and he told me *he would sell me the land* on time payments at five dollars per acre." Then, after saying that he had made arrangements to borrow the money to buy the land when Morgart the defendant came frequently to see him in June or July, 1898, and offered to go into the deal with him, he described the making of the contract with Morgart as follows: "We were talking over this property and I told him about having arranged for the money to buy the one tract; he said to me that it would be foolish to go into a deal of that kind, and if I would allow him to go in this deal he would furnish whatever money it took and that he would take one-half of the profits whatever we made out of it, and it would relieve me of borrowing this money, and I arranged not to take this money." In reply to the question, "just state what Mr. Morgart offered to do?" The plaintiff testified "Mr. Morgart's offer was that he would furnish all the money required to run this deal to a finish, and do all the work connected with it, and would do that in consideration of half the profits to be made out of it, and on the other hand if we lost in it I was to put up my half of what was lost." and further testified that he accepted Morgart's proposition.

The plaintiff and Morgart, a short time thereafter, went together to see Mr. Hamill who declined to give them at that time a written option on the land as he had given the refusal of it to other parties for thirty days. After the expiration of the thirty days Morgart went again to see Mr. Hamill, and when he returned he told the plaintiff that Hamill had given him a written option for the land and had charged him a hun-

dred dollars for it, but the plaintiff never saw this alleged written option nor, if it existed, was it put in evidence in the case.

In reference to the Maynadier Tract the plaintiff testified, fixing the date as sometime in November, 1898, "Mr. Morgart acted on my instructions to him for to buy the Maynadier land; it was understood it was to go in the same deal. I explained to him it was the natural outlet to get the timber away from the Cunningham lands, and after going on the Cunningham land he saw that himself" * * * "My arrangement" (with Morgart) "was that I was to share in the whole deal, and that it was to apply to the Maynadier as well as the Cunningham."

The defendant Morgart stoutly denied the truth of this testimony of the plaintiff, but there is other evidence in the record tending to corroborate it from which the Court might have found it to be true. We will, for the purposes of this opinion, give the plaintiff the benefit of his own version of the contract on which he bases his right to recover.

Neither the Cunningham nor the Maynadier tract of land was conveyed by its owners to either of the parties to this suit, but there is evidence in the record tending to show that both tracts were conveyed in 1899 to purchasers procured by Morgart and were afterwards sold at an advance by those purchasers and that Morgart received a portion of the profits thus realized, and refused to divide the amount so received by him, with the plaintiff.

The plaintiff's alleged contract with Morgart must be regarded as having been intended to be either a verbal assignment by the former to the latter of a one-half interest in an equitable estate in the lands mentioned in the evidence; or an agreement between the two parties for the future purchase, development and sale of those lands and an equal division of the profits or losses to result from the venture. Treated as an assignment of an equitable interest in the lands it was void under the fourth section of the Statute of Frauds for it is well settled that a transfer of an equitable interest in lands is as much within the operation of the statute as a transfer of a

legal interest.   *Polk* v. *Reynolds*, 31 Md. 106;  *A. & E. Encyc. of Law*, 2d ed., vol. 29, p. 888 and cases there cited.  ·

The defendant, having filed the general issue pleas and thus denied the existence of the contract sued on, was entitled to invoke and rely upon the Statute of Frauds, as he did on his brief and in argument, without having set it up by plea.   *Hamilton* v. *Thirston*, 93 Md. 220; *Semmes* v. *Worthington*, 38 Md. 317.

Furthermore the plaintiff when he made the contract with Morgart possessed, so far as the evidence in the record goes, no valid title either legal or equitable to the lands as he had nothing more than a verbal promise from their owner to sell them to him at a certain price.   *Green* v. *Drummond*, 31 Md. 71.   Nor can the plaintiff escape from the toils of the statute upon the ground contended for by him that the contract had been fully executed when he brought this suit, because, whatever may be said of the effect of the conveyances appearing in the record from the owners of the lands to various purchasers and from the latter to their vendees, such conveyances were not an execution of the verbal contract of Hamill to sell the lands to the plaintiff nor of the latter's verbal contract to transfer a half interest in them to Morgart.

If on the other hand we treat the contract between the plaintiff and Morgart as an agreement made by them to purchase, develop and sell the lands for their joint account and share equally the profits and losses of the venture, the Statute of Frauds was not applicable to it, but it constituted them co-partners *quoad* the undertaking covered by it.   The requisites of a co-partnership have been stated by the text-books and cases in various forms of expression which substantially agree that the essential requisite to constitute the relation is a community of interest between the parties for the purpose of profit.   Ordinarily the profits are expected to arise from the purchase and sale of some.form of property but they may be produced by the skill and industry of the partners as in the case of professional firms or those for the organization or promotion of various enterprises.   *Parsons on Partnerships*, secs.

58–61; *Lindlay on Partnership*, p. 10–13; *Rowland* v. *Long*, 45 Md. 439; *Heise* v. *Barth*, 40 Md. 267; *A. & E. Encyc. of Law*, 2 ed., vol. 22, p. 27.

As between the parties partnership is a matter of intention to be proved by their express agreement or inferred from their acts and conduct. If they intend to and do enter into such a contract as in the eye of the law constitutes a partnership they thereby become partners whether they are designated as such or not in the contract. The late JUDGE ROBINSON in speaking for this Court in *Thillman* v. *Benton*, 82 Md. 64, after reviewing the authorities bearing upon this subject and commenting upon the earlier decisions of this Court in *Rowland* v. *Long*, arrived at the following conclusion as to the present state of the law: "We take it then to be well settled that a partnership is a contract of some kind involving mutual consent of the parties, and when such a contract is entered into between two or more persons for the purpose of carrying on a trade or business with the right to participate in the profits of such trade or business, then such a contract constitutes a partnership, unless there be other facts and circumstances which show that some other relation existed."

It has been repeatedly held in different jurisdictions that an agreement by two or more persons to buy land and sell it and share either the profits or the profits and the losses constitutes them partners for that venture and entitles either of them to an accounting in equity from the others of the joint transactions. *Van Houton* v. *Copeland*, 180 Ill. 74; *Speyer* v. *Desjardins*, 144 Ills. 641; *Tyler* v. *Waddingham*, 58 Conn. 375; *Richards* v. *Grinnell*, 63 Iowa, 44; *Hill* v. *Sheibley*, 68 Ga. 556; *Parsons on Contracts*, 4 ed., sec. 67. A verbal agreement is sufficient to constitute a partnership to deal in lands, the Statute of Frauds not being applicable to such a contract. *Parsons on Partnership*, 4 ed., sec. 6; *Lindley on Partnership*, p. 88–89; *Van Houten* v. *Copeland, supra*; *Speyer* v. *Desjardins, supra*; *Richards* v. *Grinnell, supra*; *Bruns* v. *Spalding*, 90 Md. 349; *A. & E. Ency. of Law*, 2 ed., vol. 29, p. 897.

Such being the law controlling the relations of the parties

to this appeal in respect to the subject-matter of the present suit the appellee was not entitled to recover in an action at law against the appellant for a share of profits of their joint venture in the Cunningham and Maynadier tracts of land, there not appearing to have been any settlement or account stated between them.

Under these circumstance the learned Judge below should not have granted the plaintiffs third prayer which declared as matter of law that if the Court sitting as a jury found the facts therein stated the plaintiff was entitled to a verdict in his favor. On the contrary he should have granted the defendant's first prayer which asked him to declare as matter of law that under the pleadinge in the case there was no evidence legally sufficient to entitle the plaintiff to recover and the verdict must be for the defendant. In the view which we have taken of the case we deem it unnecessary to notice in detail the other prayers which asked for rulings upon segregated portions of the facts of the case.

For the error of the Court below in granting the plaintiff's third prayer and rejecting the defendant's first prayer the judgment appealed from must be reversed without a new trial.

*Judgment reversed with costs without a new trial.*

(Decided June 14th, 1906.)