J. K. DIMMICK and M. R. GANGO, Trading as J. K. Dimmick and Company, and W. HOWARD RAMSAY and ANNA M. COLEMAN, Executors of H. W. Coleman, Deceased, *vs.* CHARLES W. HENDLEY, Trading as C. W. Hendley and Company.

*Contracts for sale of goods: breach by vendee. Action for damages by vendor: pleading; declaration. Evidence.*

In an action for damages by a vendor for breach of an executory contract for the sale and delivery of goods, the plaintiff must prove that he was able and willing to deliver the goods according to the terms of the contract, and that performance was prevented by some act or default of the defendant.  p. 463

A declaration, in such case, which alleges a breach of the contract by the defendants, but omits to allege the plaintiff's liability and willingness to perform the contract, is fatally defective.                         p. 469

In general, the rule for damages, arising from the breach of a contract for the sale of property, is the difference between the market value at the time and place of delivery and the contract price.  This rule is based upon the presumption that the vendor has the property in his possession or under his control.                        p. 470

If the vendee refused to accept, the vendor may sell the property in the open market, and his damages would be the difference between what it sold for and the contract price.  p. 470

Where the property, the subject of the contract, was not in the control or possession of the vendor, he need not buy the property after the vendee has repudiated his contract and then sell it again in the market to establish damages.

pp. 470-471

On breach of such a contract by the vendee, the vendor has the right, in event of recovery, to have the damages meas-

ured by the difference between what it would have cost to
deliver the article and the contract price.             p. 471

The cost in such a case is a question for the jury.      p. 472

By a contract between them A. agreed to buy from B., and
B. agreed to sell to A., certain kinds of coke, 2,500 tons in
November and 2,500 tons in December at a price named.
A. received and paid for 2,019 tons in November, but failed
or refused to take any more; B. sold on A.'s account 418 tons
in November at five cents a ton less than the contract price;
upon A.'s refusal to order or receive any more of the coke,
B. brought suit for recovery of damages for the breach of
the contract.   *Held*, that for the coke deliverable in Novem-
ber the vendor was entitled to receive the difference between
what the 481 tons sold for, and what they would have brought
at the contract price, with interest or not, in the discretion
of the jury.                              p. 469

In such a contract, when a party is to give directions by a
date named as to the shipments and deliveries of the goods,
his failure to give any such direction and his refusal to order
or to receive the goods constitutes a breach of the contract.
                                          p. 468

It was proper for the plaintiff to show by competent evidence
that they would have been able to have delivered the coke
for the month of December; but letters and unsworn testi-
mony of third parties are not admissible in evidence for that
purpose.                                  p. 466

Even though a letter, admitted as evidence, was not proper
testimony, yet such admission is no ground for a reversal,
where it appears that the exceptant was not injured thereby.
                                          p. 466

*Decided February 2nd, 1912.*

Appeal from the Superior Court of Baltimore City
(ELLIOTT, J.).

The following are the several prayers of the plaintiff and
defendants that were offered in the case and the action of
the trial Court upon them:

*Plaintiff's 1st Prayer.*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that the defendants signed and delivered to the plaintiff the paper writing dated October 25th, 1909, and offered in evidence, and that the plaintiff signed and delivered to the defendants the letter or paper writing dated October 27th, 1909, and also offered in evidence, and the jury shall find that the plaintiff was ready, able and willing to deliver to the defendants during the months of November and December, 1909, coke in quantities and of the quality referred to in said written communication of October 25th and October 27th, 1909, and that after receiving and paying for a portion of the said coke the defendants thereafter refused to receive the balance of said coke from the plaintiff, then the plaintiff is entitled to recover in this action. (*Granted.*)

*Plaintiff's 2nd Prayer.*—If under the Court's instructions the jury shall find for the plaintiff the measure of damages is the profit which they shall find from the evidence the plaintiff would have made if the contract had been fully performed by him. And the jury in their discretion may allow interest on said sum. (*Granted.*)

---

*Defendants' 1st Prayer.*—The defendants pray the Court to instruct the jury that the plaintiff has offered no evidence legally sufficient to entitle him to recover under the pleadings in this case and their verdict shall be for the defendants. (*Refused.*)

*Defendants' 2nd Prayer.*—The defendants pray the Court to instruct the jury that the plaintiff has offered no evidence sufficient in law to entitle him to recover anything beyond merely nominal damages in respect to the cause of action set forth in the declaration. (*Refused.*)

*Defendants' 3rd Prayer.*—The Court instructs the jury that upon plaintiff's own evidence the defendants accepted and paid for all the coke they contracted to take in November, 1909, except a fraction less than 481 tons, and the plaintiff sold said 481 tons for within five cents per ton of

the contract price between plaintiff and defendants and therefore the plaintiff is not entitled to recover more than $24.05, with or without interest in the discretion of the jury, because of defendants' failure to take the whole 2500 tons in November, 1909, as contracted for. (*Granted.*)

*Defendants' 4th Prayer.*—The Court instructs the jury that no evidence has been offered legally sufficient to show the market value of 48 hour Orr coke during the month of December, 1909, and therefore the plaintiff is not entitled to recover more than nominal damages because of the failure of the defendants to accept any coke from the plaintiff in December, 1909. (*Refused.*)

*Defendants' 5th Prayer.*—The defendants pray the Court to instruct the jury that if they shall find for the plaintiff, they shall only allow him by way of damages the difference between the market price and the contract price of the coke at the ovens of the Orr Coal and Coke Company at the time or times when the said coke was deliverable under the contract in evidence. (*Refused.*)

*Defendants' 6th Prayer.*—The Court instructs the jury that the plaintiff is not entitled to recover any damages for the defendants' failure to take the 2,500 tons contracted for in December unless the jury find that the plaintiff was able to deliver said 2,500 tons in December, 1909. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, PATTISON, THOMAS and URNER, JJ.

*Edwin T. Dickerson* and *Samuel S. Field,* for the appellants.

*Frank Gosnell,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellees on this record recovered a judgment in the Superior Court of Baltimore City for $1,395.46 against the appellants. This is the defendants' appeal from that judgment.

It appears from the record that the parties to the suit entered into a written contract by which the plaintiff agreed to sell and the defendants to buy from the plaintiff five thousand tons of 48 hour "Orr" West Virginia Furnace Coke to be shipped by the plaintiff as directed by the defendants. Twenty-five hundred tons were to be shipped in the month of November, 1909, and twenty-five hundred tons in the month of December, 1909, each month's shipment to be paid for in cash on the 20th day of November and December, respectively. The plaintiff delivered to the defendants under the contract 2,019.20 tons of coke in November, 1909, and upon the allegation that the defendants repudiated their contract and refused to receive or direct the shipment of the remaining coke, this suit was brought for the recovery of damages for the breach of the contract.

The coke mentioned in the contract meant coke burned forty-eight hours in the ovens of the "Orr" Coal and Coke Company, a West Virginia corporation, for use in iron furnaces, and the price to be paid by the defendants to the plaintiff was $2.20 per ton of 2,000 pounds, f. o. b. ovens.

By a decree of the Circuit Court of the United States for the Northern District of West Virginia, passed in February, 1909, the Orr Coal and Coke Company, the manufacturer of the coke specified in the contract, was placed in the hands of William C. Brown and William G. Conley as receivers, who were authorized by the decree appointing them to take charge of the property and assets of the company, and to operate and manage its business through their superintendents, managers and agents.

There is evidence in the record tending to show that the plaintiffs had a contract with the receivers by which they were to deliver to the plaintiff the coke mentioned in the contract at the rate of $1.65 per ton.

In view of some of the questions presented by the record, it must be kept in mind that the plaintiff was not the owner, manufacturer, or producer of the coke contracted to be sold nor was it in their possession or control; but that under the

terms of the contract it was to be produced by the Orr Coal and Coke Company from which the plaintiff was required to procure it.

The defendants accepted 2,019.20 tons on account of the November delivery, and the plaintiff sold and delivered for account of the defendants 480.81 tons to the Wharton Furnace Company at $2.15 per ton, and charged them with five cents per ton, being the difference between the contract price and the sale price, the total difference being $24.05.

By the defendant's third prayer, the Court instructed the jury that since it appeared by the plaintiff's evidence that the defendants accepted and paid for all the coke they contracted to take in November, 1909, less the amount sold to the Wharton Furnace Company, the defendants were not entitled to recover more than $24.05, with or without interest in the discretion of the jury because of the defendants' failure to take the whole 2,500 tons in November, 1909, as contracted for.

This instruction, which was properly granted, removed from the case all question as to the November delivery, and left for determination the sole question whether the defendants were liable under the contract for their failure to accept the 2,500 tons which were to be delivered in December, 1909.

In an action for damages for the breach of an executory contract of this character, it is essential for the plaintiff to prove that he was able and willing to deliver the goods according to the terms of the contract, and that performance on his part was prevented by some act or default of the defendant. This principle is elementary, and is accepted as the law of the case by both parties to the controversy.

The record presents for our consideration: First, the rulings of the court on the admission or rejection of evidence; second, the legal sufficiency of the evidence to take the case to the jury; third, the proper rule as to the measure of damages to be applied under the facts. The second and third questions arise under the rulings upon the prayers and on

the overruling of the defendant's special exception to the granting of the plaintiff's first prayer;. fourth, the propriety of an oral opinion delivered in the presence of the jury by the presiding judge in passing upon the prayers; fifth, the sufficiency of the declaration which was attacked by the plaintiff's prayer which referred to the pleadings.

There are eight bills of exceptions to the rulings on evidence. We find no reversible error in the first, second, third, fourth, fifth and eighth exceptions.

The plaintiff offered in evidence three letters, one dated January 7th, 1910, from the defendants to William G. Brown, who had been one of the receivers of the Orr Coal and Coke Company; Mr. Brown's reply to that letter addressed to the defendants, and dated January 20th, 1910; and a letter to the defendants dated January 24th, 1910, and J. M. Orr to whom Mr. Brown had referred the defendants for the information sought in their letter to him.

In the letter of January 7th, 1910, the defendants admit the contract with the plaintiff to take from the 5,000 tons of coke at .$2.20 a ton to be delivered 'in equal tonnage in. November and December, and they admit that they had concelled their contract with the plaintiff. What they wanted to know was whether there was a clause in the contract between the receivers of the Orr Coal and Coke Company and C. W. Hendley Company, the plaintiff, under which when the plant was sold and the receivership discontinued, Hendley Company's contract was cancelled. They asked Mr. Brown for information upon this point. Mr. Brown's reply referred the defendants to J. M. Orr, who was the superintendent of the plant during the receivership. Orr's letter to the defendants stated that there was nothing in the contract about cancellation. The admissions of the defendants we have referred to. clearly made the letter of January 7th, 1910, admissible, and it does not appear that the defendants could have been injured by Orr's letter, as it is not claimed by them that any clause of cancellation was contained in the contract referred to.

Before passing on the remaining exceptions to the rulings on testimony, it is proper to refer to certain facts disclosed by the record. The greater number of these exceptions arose out of an effort on the part of the plaintiff to show their ability to perform the contract.

On November 26th, 1909, the receivers of the Orr Coal and Coke Company sold the property to William A. Stone, and this sale was ratified by the Court, and Stone took possession on the first of December, 1909.

At that date all the coke at the plant had been disposed of by the receivers. On the 29th of November, 1909, there was 1000 tons of coke loaded upon cars at the plant, which the receivers were anxious to dispose of. This coke was offered to the defendants on November 29th; but they declined to receive it, claiming properly that they were under no obligations at that date to take the coke on account of the December delivery. This coke was sold to another party.

J. M. Orr, who was the manager of the plant during the receivership, occupied that position under Mr. Stone until January 1st, 1910, and it was upon his testimony and that of Stone that the plaintiff principally relied to take the case to the jury.

The plaintiff was under no obligation under their contract with the defendants to buy the coke from the receivers. It was no concern of the defendants from whom the plaintiff bought the coke so long as they were able to deliver the character of coke called for by the contract.

If Stone was willing to let them have the coke the defendants had no reason to complain. If they could have gotten the coke from Stone at an advanced price it was their right to do so, although their gain under the contract would have been to that extent reduced. It was, therefore, proper for the plaintiff to show that they could have gotten coke from Stone and at what price, and for this purpose it was permissible for them to prove that after Stone had bought the property there was an arrangement by which he was to fill the contract made by the receivers, and there was therefore

no error in admitting that character of evidence, which con-
stitutes the second exception. The third exception is not
pressed by the appellants. The question was as to the price
to be paid Hendley and Company by the defendants. The
question was not answered, although no valid objection to
such evidence could be made. For the reason stated in
passing on the second exception there was no error in the
ruling on the fourth as that exception presents substantially
the same question. We would not reverse for the admission
of the evidence embraced in the fifth exception although
that testimony ought not to have been admitted, but stand-
ing alone we would not pronounce it reversible error.

There was, however, serious error in admitting the letters
embraced in the sixth and seventh exceptions. These letters
were written by J. M. Orr, a stranger to the defendants, to
the plaintiff in this case. One is dated December 11th,
1909, and the other December 18th, 1909. In both of these
letters Orr declared his ability to deliver to the plaintiff
sufficient amount of coke to complete their contract with
the defendants. He also stated in the letter of December
11th. 1909, that he had authority from William A. Stone
and Company to place with the plaintiff during the next
year 2500 to 4000 tons of coke. We are of opinion that
unsworn declarations of this character bearing upon the
essential and disputed question in the case as to the ability
of the plaintiff to make the deliveries under the contract
must of necessity have prejudiced the defendants case.
There was no error in the eighth exception. It was taken
to the refusal of the Court to permit a witness to repeat his
former testimony that a quantity of coke was sold to the
Central Iron and Steel Company at $2.20 a ton. In the
view we take of the case we do not find it necessary to dis-
cuss the ninth exception, which was taken to a lengthy oral
opinion delivered by the judge in passing upon the prayers.

2. This brings us to the rulings on the prayers. The
plaintiff's first and second prayers were granted. By the
first prayer the jury were told that if they found that the
defendants signed and delivered to the plaintiff the paper

writing dated October 25th, 1909, and offered in evidence, and that the plaintiff signed and delivered to the defendants the letter or paper writing dated October 27th, 1909, and also offered in evidence, and if the jury found that the plaintiff was ready, able and willing to deliver to the defendants during the months of November and December, 1909, coke in the quantities and of the quality referred to in said written communication of October 25th and October 27th, 1909, and that after receiving and paying for a portion of said coke the defendants thereafter refused to receive the balance of said coke from the plaintiff, then the plaintiff were entitled to recover.

By the second prayer the jury were instructed that if they found for the plaintiff under the instructions "the measure of damages is the profit which they shall find from the evidence the plaintiff would have made if the contract had been fully performed by him and that the jury might in their discretion allow interest on said sum."

The Court granted the defendant's third and sixth prayers, and refused the first, second, fourth and fifth, and overruled their special exception to the plaintiff's first prayer. This exception asserted that there was no evidence that the plaintiff was ready and able to deliver 2500 tons of Coke in December. We have discussed the defendants' third prayer and found it free from objection. Their sixth prayer asserted that the plaintiff could not recover, unless the jury found the plaintiff were able to deliver 2500 tons of Coke in December, 1909. This prayer was properly granted. The defendants' first prayer sought to withdraw the case from the jury upon the ground that no legally sufficient evidence had been offered under the pleadings to entitle the plaintiff to recover.

The legal proposition asserted by the plaintiff's first prayer is correct, and that prayer should have been granted, unless one or the other of the objections raised to it by the defendants' first prayer and their special exception be found to be well taken.

The questions raised by this prayer and the special exception are: first, did the defendants violate their contract with the plaintiff? Second, did the plaintiff offer evidence legally sufficient to show their willingness and ability to perform the contract? Third, does the declaration state a good cause of action?

As to the first question we think there is no difficulty. It was the duty of the defendants under the contract to give directions for shipment, and the parties intended that these directions should be given not later than the 20th of each month, because the contract expressly provided that each month's shipment should be paid for in cash on the 20th day of each month. It is admitted that the defendants did not direct shipment during December, 1909. That they did not intend to give directions or accept the coke appears to be apparent from their conduct and from their letter of December 1st, 1909. This is further apparent from the fact that they contracted with Stone to supply the coke for December, 1909, at a lower price than that specified in their contract with the plaintiff.

We think there was evidence from which the jury might have found that the plaintiff was able to deliver the coke. Upon this branch of the case the question for us is not whether the evidence offered provided this fact; but whether it tended to prove it. It cannot be successfully contended that there was a total failure of proof on this point. Mr. Stone, the purchaser, was anxious to keep the plant running and to sell its product. The defendants had contracted with him for 2,500 tons for December, which they were under obligations to take from the plaintiff. The market was dull, and the price of coke dropped and it was difficult "to sell coke at all in the month of December." The defendants repudiated their contract with Stone for the December deliveries, and he was obliged to dispose of the coke which the defendants had refused to take from him to other parties. He was obliged to close down the plant about the middle of December because of want of orders. He authorized his

manager, Orr, to sell, and we think it is quite evident from his testimony that he would have been glad to have gotten orders so that he could have kept his plant in operation. It is doubtful, however, if he would have sold as low as $1.65 per ton; but the price at which he would have sold would have been material only on the question of damages. Orr's testimony tended to show that he could have furnished the coke, and he further testified that he had an option with Mr. Stone at $1.80 a ton. Without further discussion of the evidence, we are of opinion that the jury might have reasonably concluded, if they believed Orr's testimony, that the plaintiff could have performed their contract.

As to the sufficiency of the declaration. It is the settled law in this class of actions that a plaintiff cannot recover unless he shows that he was *able and willing* to make delivery as required by the terms of the contract. *Walter* v. *Bloede Company*, 94 Md. 80.

It is an elementary rule of pleading that the facts essential to recovery must be alleged and proved. It does not follow from the *mere* fact that the defendants had committed a breach of the contract that the plaintiff was entitled to recover. The declaration in this case alleges a breach of the contract by the defendants, but omits to allege the plaintiffs' ability and willingness to perform the contract, and it is for this reason fatally defective. 9 *Cyc.* 723-724; *Tyler's Pleading*, 94; 1 *Poe's Pl. & Prac.*, sec. 565. If the forms of declarations in actions of this kind given by Mr. Chitty there is contained the allegation that the plaintiff was "ready and willing" to deliver the goods. 2 *Chitty's Pl.* 264.

There remains for consideration the question as to the proper rule of damages to be applied to the case. As we have seen, the Court instructed the jury, in case they found for the plaintiff, to allow them such profit as the jury might find they would have made if the contract had been performed, with interest, in the discretion of the jury.

The defendants' second prayer asked the Court to rule as a matter of law that the plaintiff could not recover more than nominal damages, and their fourth prayer was to the same effect. By their fifth prayer they asked the Court to instruct the jury that if they found for the plaintiff they should only allow them by way of damages "the difference between the market price and the contract price of the coke at the ovens of the Orr Coal and Coke Company at the time or times when the coke was deliverable under the contract in evidence."

The just and well-settled general rule for ascertaining the damages arising from the breach of a contract for the sale of personal property is the difference between its market value at the time and place of delivery and the contract price. This rule is based upon the presumption that the vendor has the property in his possession or under his control. In such case if the vendee refuses to accept the vendor may sell the property in the open market, and his damage would be the difference between what it sold for and the contract price. This rule also obtains in a contract to manufacture, as to such articles as have been already manufactured and ready for delivery where the contract is broken by the defendant. The rule rests upon the principle of the indemnification of the injured party for the injury he has sustained, and, ordinarily, the value in the market at the time and place of delivery under the contract furnishes the readiest, most direct, and fairest method of ascertaining the measure of this indemnity. The rule was properly applied in this case so far as it related to the coke which came into the control of the plaintiff and was sold by them for account of the defendants; but as to the balance of the December delivery, this rule could not have been properly applied. The coke had to be manufactured by the Orr Coal and Coke Company. It was not in the control or possession of the plaintiff. It was necessary for them to buy it from the manufacturers. They were under no obligation to buy it

after the defendants had repudiated their contract, and then sell it in the market in order to establish their damages; but they had a right, in event of recovery, to have their damages measured by the rule laid down in the plaintiff's second prayer.

This was a rule applied in *Baltimore & Ohio R. R. Co.* v. *Brydon*, 65 Md. 198; *Roehn* v. *Horst and others*, 178 U. S. 1; *Jackson, Trustee,* v. *W. B. & A. R. R. Co.*, 35 App. Cases, D. C. 41.

In *U. S.* v. *Behan*, 110 U. S. 344, the Court said: "The *prima facie* measure of damages for the breach of a contract is the amount of loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract, without fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items, or grounds of damage, namely: First, what he has already expended towards performance, less the value of materials on hand; second, the profits he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and, therefore, incapable of that clear and direct proof which the law requires. But where, in the language of CHIEF JUSTICE NELSON in the case of *Masterton* v. *Brooklyn,* 7 Gill. 69, they are "the direct and immediate fruits of the contract," they are free from this objection; they are then "part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as the fulfillment of any other stipulation."

In the case in hand, what the plaintiff had under the contract sued on was the right to buy and deliver to the defendants the character and qualities of coke specified in the contract, and to receive the contract price therefor. Assuming that they were deprived of this right by the act of the defendants and that they could have bought and were ready and able to deliver the coke, then their loss as to such coke

not in their possession or control is the difference between what it would have cost them to deliver the coke and the contract price. How much it would have cost them was a question for the jury, and we do not understand that the instruction granted, as argued by the appellants, fixed the plaintiff's loss at the difference between a $1.65 and $2.20 per ton. It follows from what we have said that there was no error in rejecting the defendants' second, fourth and fifth prayers. For error in the rulings embraced in the sixth and seventh exceptions, and because the declaration was fatally defective the judgment will be reversed. Because the declaration was bad the defendant's first prayer for that reason only should have been granted.

> *Judgment reversed and new trial awarded with costs to the appellants.*