## J. A. LAPORTE CORPORATION *v.* PENNSYLVANIA-DIXIE CEMENT CORPORATION.

[No. 24, January Term, 1933.]

*Decided March 21st, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter L. Clark* and *Roszel C. Thomsen,* for the appellant.

*John Philip Hill* and *Richard F. Cleveland,* with whom were *Charles Carroll, Jr., Semmes, Bowen & Semmes,* and *Hill, Ross & Hill,* on the brief, for the appellee.

Bond, C. J., delivered the opinion of the Court.

A buyer of cement from a manufacturer repudiated its contract before any of the cement had been delivered or called for, and the seller, treating the whole contract as broken, recovered judgment for damages from the breach measured by the difference between the cost of production and the contract price, in so far as it was found feasible to estimate damages; and on the buyer's appeal the question chiefly argued is whether this was the correct measure of damages under the facts shown.

The Laporte Corporation, having a contract for the construction of a dam on Gunpowder River and Pretty-Boy Creek in Baltimore County, to impound water for part of the water supply of Baltimore City, entered into a written contract on March 24th, 1931, with the Pennsylvania-Dixie Corporation, a manufacturer of cement, for all the Portland cement required for the work, estimated at 200,000 barrels, to be delivered at Parkton, Maryland, prior to December 31st, 1931. The price stated in the contract was $2.25 a barrel, in cloth sacks; and it was stipulated that the seller should reduce the price to meet any subsequent reductions by it in market price. Testimony on behalf of both parties, however, established the fact that the price actually agreed upon was less than $2.25 a barrel; that, in order to offset a disadvantage of longer transportation for deliveries from this seller than would be necessary for a competitor nearer the work, fifteen cents a barrel should be deducted from that price. Whether the agreement went further, and required that the same deduction should be made from any subsequently reduced market price, was a question in dispute. The agreement on the actual price was not reduced to writing.

The seller is a large manufacturer and seller of cement, having in all, about the country, eight factories, with a total production capacity of 12,200,000 barrels a year; and its nearest factories, numbered four and six, from which cement for this contract would have been shipped, had a total capacity of 3,700,000 barrels. The total production capacity of the seller, according to its testimony, was of a larger amount

than could be marketed at any price, however low, and the amount that could be marketed depended largely on the extent of the success or failure of efforts of its salesmen in competition with salesmen of other sellers. Under the conditions existing in 1931, the plants worked to only forty-eight per cent. of their full capacity. On March 31st, 1931, a week after the making of the present contract, the seller had on hand, at its plants numbered four and six, 577,000 barrels of cement made up, and had commitments or orders amounting to 1,037,000 barrels excluding this order. On December 31st, 1931, the date specified for concluding deliveries on the contract, it had on hand 404,000 barrels, and commitments for 1,190,000 barrels. During the year 1931 its total production at those two plants amounted to 2,613,350 barrels, and its total shipments, filling orders, amounted to 2,595,000 barrels. From a third plant in the same nearby region, and from which shipments on this contract might have been made, it shipped on other orders 75,000 barrels, but produced none during that year.

Within a short time after entering into the contract, the buyer gave notice that it would not consider it binding, and made a contract with another seller and manufacturer; and it is not denied that in doing so it was guilty of a breach of its contract with the appellee.

The buyer raises on appeal a question whether the contract, lacking as it does a writing of the essential element of the price actually agreed upon, is unenforceable under the statute of frauds, as embodied in the Code, art. 83, sec. 25. *Browne, Statute of Frauds* (5th Ed.), sec. 376; *Woods, Statute of Frauds,* sec. 351; 1 *Williston, Sales,* sec. 103; *Goodman v. Griffiths,* 1 Hurl. & N. 574; 1 *Uniform Laws Annot.* 64. This is a question which does not appear to have been raised below, and for that reason seems foreclosed as possible ground of reversal on appeal. Code, art. 5, sec. 10. There was testimony that a writing on the actual price was lacking, but in no place does it appear to have been suggested that this affected the enforceability of the contract. The defendant prayed generally that a verdict be rendered in its favor be-

cause there was no evidence legally sufficient to entitle the plaintiff to recover, and a ruling on the question could, perhaps, have been made on that prayer, but it has long since been decided that a prayer sufficiently general in terms to afford ground for ruling on a defense raised does not meet the requirement that the defense must plainly appear to have been raised. *Tyson v. Shueey*, 5 Md. 540, 552. A reading of the record indicates rather clearly that it was not raised in this instance.

The rules for measuring damages from a buyer's anticipatory breach of a contract of sale embodied in the Sales Act, Code, art. 83, sec. 85, are broadly stated, for they were intended to leave latitude for adaptation to the circumstances of particular cases in pursuing the effort to restore to the seller all that he might lose by loss of the sale. See *Amer. Law Inst., Restatement Contracts*, sec. 329, *Comment; Dimmick v. Hendley*, 117 Md. 464, 470, 84 A. 171; *Kahn v. Carl Schoen Silk Corp.*, 147 Md. 516, 128 A. 359; *Maryland Fert. & Mfg. Co. v. Lorentz*, 44 Md. 218, 235; *Ontario Co. v. Hamilton Co.*, 27 Ont. App. 346, 351. No one measure is fixed upon as the ordinary or preferred measure. The comprehensive principle is stated in subsection 2: "The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract"; and the ensuing subsections, providing for more particular applications of that principle, are broad and elastic in form. The precedents in decided cases which have applied one measure and another to similar contracts are in great abundance; and not in agreement. Opposite conclusions have been reached on hardly distinguishable facts. See review in 44 *A. L. R.* 258.

The question which finally tests the appropriateness of a given measure in a case of a breach of contract of sale of goods by a manufacturer seems to be not merely whether the contract in a particular case was one for manufacture as well as for sale; the inquiry goes closer to the effect of breach on the seller, and to the position in which it has left him. If he should be left with goods on hand for the sale, and so with

their market value in his possession and available on a market, his loss would be only the further amount of the difference between the market value and the contract price; and that difference would be the appropriate measure of damages. If, on the other hand, that further margin should not be his only loss from the breach, if there should be no market value of goods still available to him, either because he has no goods left on hand, or there is no market for any he has, then his loss would be, generally speaking, and disregarding adjustments of minor items, the difference between his cost and the contract price. In each situation the result to him would be the same in theory, the difference being that upon application of the one measure his total loss would be recovered in part from the market and in part from the buyer, while upon application of the other it would all be recovered from the buyer. 2 *Williston, Sales,* secs. 588, 589; *Mechem, Sales,* sec. 1702; 2 *Sedgwick, Damages,* sec. 752. But it is not always clear whether under particular circumstances the seller may fairly be said to hold goods sold, available to aid in making him whole. In cases especially of larger manufacturers, or those whose plants are not operated from sale to sale, but continuously, the relation of production to a particular sale is, of course, not the simple, direct one that exists in a case of goods made to order. It is then difficult, or impossible, to identify any portion of the goods produced as supply for a particular sale; and the just basis for measuring the loss and damage may be that of the effect of the breach on disposal of the seller's whole production.

The contract here was one for sale of a staple article of commerce, but by a seller known to be the manufacturer. It contains references to the seller's plants and the effect of strikes and delays in them; and the buyer's president, who himself bought the cement, testified that he dealt with factories in procuring prices. From the testimony previously recited, it might be inferred that production at the seller's plants did not run materially ahead of all orders, and that there was at least a probability of such a relation, or keeping pace, between total production and sales as would cause the

seller to be left by a repudiation practically without the means of recovering so much of its loss from the market. If its total output had to be reduced to forty-eight per cent. of its capacity, then loss of one large sale might fairly be regarded as having had the effect of staying the making up of so much cement in the end. Williston (2 *Sales,* secs. 583a and 584) is of opinion that, even if there are goods allocated to a particular sale, this measure of the difference between cost of production and contract price may be the right one: "If by the terms of the contract the seller was to manufacture the goods, or if the buyer had notice when the contract was made that the seller intended to furnish goods of his own manufacture, the general principles governing consequential damages would seem to permit the seller to base his damages not on the market value of his product but on the cost of manufacture, which may be much less than the market value. There seems no logical reason why this rule should not be generally applicable though the goods were completed at the time of the breach or even at the time when the contract was made. It is true the seller still has the goods and may resell them at the market price, but by doing so he diminishes his capacity to make other sales of his product unless the full possible output of his plant can be sold at that price. Except in that contingency, therefore, his actual damage is the difference between the contract price and the cost of manufacture." In the present case it might, as has been stated, be doubted whether goods could be said to have been so allocated to and identified with the particular sale, and we need not apply the conclusions quoted, in full. But for reasons stated the court finds no error in the adoption by the trial court of the measure described. This appears to be in harmony with the views adopted by this court in earlier cases. *Eckenrode v. Chemical Co.,* 55 Md. 51; *Dimmick v. Hendley,* 117 Md. 464, 470, 84 A. 171; *Devoine Co. v. International Co.,* 151 Md. 690, 136 A. 37.

To prove the cost of production, the plaintiff introduced as a witness its assistant secretary and assistant treasurer, who had supervision of the accounts and costs of the corporation,

and, against the defendant's objection, offered in evidence compilations, made by the witness for use at the trial, of totals of figures collected from the various parts of its plants and entered in the ordinary course of business on cost records kept at the plants. The final records kept in the course of business were not in court. It was objected that the compilation was not rendered admissible by the Act of 1929, ch. 517 (Code, Supp. 1929, art. 35, sec. 54A), because not made in the regular course of business, and therefore remained objectionable as hearsay testimony. It appears that the same final figures of cost were before the court in a statement of claim prepared by the plaintiff and furnished to the defendant, and introduced in evidence by the defendant. This latter statement seems to have been introduced to establish an admission by the plaintiff as to one item contended for by the defendant; but there was no announcement of that purpose and no restriction placed upon the use and effect as evidence of the statement of any of the facts included; and, this being true, it is questioned whether on appeal this court could find ground for reversal for error, if there was error, in admitting the compilation showing the same cost in more detail. Reference is made to the decisions that, when a defendant introduces in evidence a statement of a plaintiff in order to show favorable items, the items in it which go to prove the plaintiff's claim are also in evidence. *King v. Maddux's Excr.,* 7 H. & J. 467; *Lee v. Tinges,* 7 Md. 215, 233; *Dennis v. Dennis,* 15 Md. 73, 141; *Reynolds v. Manning,* 15 Md. 510, 528; *Askin v. Moulton,* 149 Md. 140, 146, 131 A. 82. And see *Lockerman v. Trust Co.,* 146 Md. 330, 347, 126 A. 140. Strictly, the items of cost in the written statement, while, as merely parts of the plaintiff's claim, their weight is open to attack, constituted some legally sufficient evidence of the facts stated, exactly as if they had been stated orally on the stand without objection. Objectionable evidence admitted without objection has the force and effect of proper evidence. *Mahoney v. Mackubin,* 54 Md. 268, 274. And it is settled that evidence introduced without limitation of purpose is in for all purposes. *Morrison v. Whiteside,* 17 Md. 452, 459;

*Eckels & Sons Ice Mfg. Co. v. Cornell Economizer Co.,* 119
Md. 107, 116, 86 A. 38. In this situation, therefore, it
might be improper to reverse a judgment because of any error
in the admission of copied statements in the hands of a wit-
ness. It may be questioned whether, in some cases of material
harm done by rulings admitting such statements for plaintiffs,
this strictly logical reasoning would prevent the court's re-
versing a judgment to remedy the error despite the fact that
the same items were included in a statement which a defend-
ant has introduced for a clearly limited, though unannounced,
purpose. But, in the present instance, reversal because of the
use of the compilations would seem to require as strict and
unprofitable an application of rule as would prevention of
reversal because of defendant's introduction of the additional
statement. The books from which the final figures had been
compiled were said to be large records, and could apparently
be of use in the trial only through the medium of a compila-
tion or by a checking of detailed items, neither of which
steps would seem to have been practicable or of much value.
A defendant in such a situtaion is at a disadvantage which
might perhaps be removable only by resort to a previous
examination of the final book entries, or by an account from
them. Code, art. 75, sec. 106. The witness using the com-
pilation was the officer of the plaintiff, whose business it was
to gather the facts and make the calculations of cost on them.
And commercial accounts of a wide description, made up
for the purpose, have, when supported by oaths of credible
witnesses, some recognized value as proof. Code, art. 35,
sec. 51.

The appellee contends upon several grounds that there was
no error in admitting the evidence over objection, even under
the strict rules of law. See *Summons v. State,* 156 Md. 390,
395, 144 A. 501. But we need not consider these, for we
conclude that, if there was error, it would not, because of the
facts and arguments reviewed above, afford just ground for
reversing the judgment.

There are exceptions to other rulings on evidence, but the
one just considered seems to be the only one for discussion

of which the opinion should be prolonged. We have found no reversible error in the rulings.

*Judgment affirmed, with costs.*

On motion for re-argument.

On motion for a re-argument of this case it is disputed whether the objection against enforcement of the contract because of the prohibition of the Statute of Frauds was raised and pressed at the trial in argument on the defendant's prayer for direction of a verdict in its favor, and the dispute is one which this court, in the absence of any reference to the objection in the record, cannot decide. But the appellant contends that the statute and rule restricting review on appeals to questions which plainly appear to have been decided below (Code, art. 5, sec. 10), is not regularly applied to exclude from consideration new questions which might control the decision on such a prayer, and the court is referred to some recent cases in which points of law not raised and decided below have controlled decisions of this court on prayers for direction of verdicts. More closely relevant are two other cases which have come to the attention of the court, *Hamilton v. Thirston,* 93 Md. 213, 48A. 709, and *Morgart v. Smouse,* 103 Md. 463, 63 A. 1070, in both of which the unenforceability of contracts for want of writing in compliance with the Statute of Frauds was held to require reversal of judgments because prayers for directed verdicts had been refused, although no objections had been made below on the statute.

It is true that the section of the Code has not been applied to require that every contention of law be specified in the record in some manner, and there has been no formulation of a rule for distinguishing in all instances between questions which need appear to have been so raised below, and those which need not. On the one hand, objections to form and method, and objections to evidence, have ordinarily been

held subject to the statutory requirement, but there are exceptions to this statement in decisions that the requirement does not apply to questions raised on demurrers or motions in arrest of judgment. *State, use of Charlotte Hall, v. Greenwell,* 4 G. & J. 407; *Price v. Thomas,* 4 Md. 514; *Wolfe v. Hauver,* 1 Gill, 84, 92; *Burgess v. State, use of Skinner,* 12 G. & J. 65; *Bullitt v. Musgrave,* 3 Gill, 31. On the other hand, what may be regarded as reasons in support of a point, as distinguished from the point or question itself, need not appear stated in the record; this court will review a decision on the point without restriction to the reasons considered below. *Sothoron v. Weems,* 3 G. & J. 435; *Parker v. Sedwick,* 4 Gill, 318. All questions necessarily raised by an instruction will, of course, be considered as having been before the trial court. *Bartlett v. Musgrave,* 3 Gill, 31; *Edelen v. State, use of Jackson,* 4 G. & J. 277.

It was settled in *Parr v. City Trust Co.,* 95 Md. 291, that the form of prayer used in this case, seeking direction of a verdict for want of legally sufficient evidence, was sufficiently specific to meet the statutory requirement; but no exact definition of the questions included in a contention of want of legally sufficient evidence has been attempted, and perhaps none is feasible. Without reference to the decisions in *Hamilton v. Thirston* and *Morgart v. Smouse, supra,* we should have regarded the objection to enforcement of a contract for want of writing as an objection to form which would be raised too late on the appeal after a full trial on the merits. That is the view taken in the great majority of other jurisdictions; the contracts referred to in the statute are not void, but only voidable at the option of the party sought to be charged, and the option is viewed as exercised by acceptance of the oral contract if the trial is gone through with and verdict taken on the assumption that the oral contract is sufficient. See review of decisions, 49 *L. R. A.* (N. S.), 1, 12 and 29; *L. R. A.* 1917B, 1071. Compare *Wolfe v. Hauver, supra.* And in a recent case decided by the United States Circuit Court of Appeals

for the Fourth Circuit, *General Motors Truck Co. v. Texas Supply Co.,* 64 Fed. (2nd), 527, the decision in the original opinion in the present case has been taken as settling the law of this jurisdiction to the same effect. As the conclusion thus relied on accords with the view of this court as well as with that of the great majority of courts elsewhere, we have concluded that the decision previously rendered here should not now be recalled, and that the objection should remain classed as one of those which cannot be raised for the first time on appeal. The motion for re-argument is refused.

*Motion overruled.*